[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, Slip Opinion No. 2020-Ohio-5371.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-5371

WELSH-HUGGINS, APPELLANT, *v.* JEFFERSON COUNTY PROSECUTOR'S OFFICE, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, Slip Opinion No. 2020-Ohio-5371.]

*Public Records Act—Security-record exception—To constitute an exception to the Public Records Act, record must be directly used to maintain the security of a public office—Judgment reversed.*

(No. 2019-1481—Submitted July 21, 2020—Decided November 24, 2020.)

APPEAL from the Court of Appeals for Jefferson County, No. 19 JE 0005, 2019-Ohio-3967.

————————————

**DONNELLY, J.**

{¶ 1} This case presents the issue of whether the video from an exterior courthouse security camera that captured the shooting of a judge as he was about to enter the courthouse through a nonpublic secured entry was a "security record"

under R.C. 149.433(A)(1) and therefore exempt from release as a public record under R.C. 149.433(B)(1). In proceedings brought pursuant to R.C. 2743.75, the Court of Claims determined that competent evidence had not been presented to establish the security-record exemption and consequently ordered the video's public release subject to certain redactions for undercover-officer confidentiality. The Seventh District Court of Appeals reversed that judgment, holding that the video was a security record that was exempt from public disclosure. We agreed to consider whether the court of appeals correctly determined that the security-record exemption had been established by competent admissible evidence. Based on our review of the record, we hold that the surveillance video at issue here did not fall squarely within the claimed exemption. We accordingly reverse the judgment of the Seventh District Court of Appeals.

## I. FACTS

{¶ 2} On August 21, 2017, Joseph J. Bruzzese Jr., a judge of the Jefferson County Court of Common Pleas, was shot and seriously wounded by Nate Richmond near the courthouse. Judge Bruzzese and a nearby probation officer returned fire, and Richmond was fatally wounded. Judge Bruzzese survived his gunshot wounds after undergoing surgery and a lengthy hospital stay.

{¶ 3} The Jefferson County Courthouse was equipped with a security-camera system that recorded the shooting incident. The camera was positioned outside the door where only courthouse personnel entered and exited the courthouse.[1]

{¶ 4} Later that day, appellant, Andrew Welsh-Huggins, a reporter for the Associated Press, sent an email to appellee, the office of the prosecuting attorney in Jefferson County ("prosecutor"), requesting, as a public record under R.C.

---

1. A separate street-surveillance camera owned and operated by the city of Steubenville captured portions of the incident as well. That video is not under the authority or control of the prosecutor and is not at issue here.

2

149.43, a copy of the courthouse video showing the shootings. On August 22, 2017, the prosecutor, Jane M. Hanlin, denied Welsh-Huggins's public-records request in writing, setting forth multiple claimed exemptions. Welsh-Huggins's subsequent requests for the video were likewise denied by the prosecutor, as were requests by the assistant general counsel of the Associated Press.

{¶ 5} On May 7, 2018, Welsh-Huggins filed a public-records-access complaint in the Court of Claims pursuant to R.C. 2743.75. After unsuccessful mediation, the prosecutor filed an answer and motion to dismiss on September 11, 2018. Among other things, the prosecutor asserted that the video was exempt from public-records release as a "security record" pursuant to R.C. 149.433(A)(1) and 149.433(B)(1). Supplemental responses were permitted pursuant to R.C. 2743.75(E)(2).

{¶ 6} On January 28, 2019, the special master filed his report and recommendation. *See* 2019-Ohio-473. Denying the prosecutor's motion to dismiss, the special master determined that the prosecutor failed to meet her burden to prove that any portion of the video was exempt as a security record under R.C. 149.433(A)(1). The special master recommended that the prosecutor be ordered to provide Welsh-Huggins a redacted copy of the video in any available format that Welsh-Huggins requested. On February 20, 2019, the Court of Claims adopted the special master's report over the prosecutor's objections and ordered release of the video.

{¶ 7} The prosecutor filed an appeal to the Seventh District Court of Appeals pursuant to R.C. 2743.75(G)(1). The court of appeals reversed the judgment of the Court of Claims, holding that the video was exempt from disclosure as a security record under R.C. 149.433(A)(1) and R.C. 149.433(B)(1). 2019-Ohio-

3967, 133 N.E.3d 550, ¶ 1, 32-44.[2]  The court of appeals found no error in requiring the prosecutor to prove that the video fell squarely within the claimed exemption. *Id*. at ¶ 50.  Having determined that the video was exempt from disclosure as a security record, the court of appeals held that the prosecutor's remaining assigned errors were moot. *Id*. at ¶ 45-46.

{¶ 8} We accepted Welsh-Huggins's appeal and agreed to consider the following proposition of law: "A public office must produce competent, admissible evidence to support an assertion of an exception to the Public Records Act." *See* 157 Ohio St.3d 1534, 2020-Ohio-122, 137 N.E.3d 1207.  For the reasons that follow, we now reverse the judgment of the court of appeals.

## II.  ANALYSIS

{¶ 9} This case provides us with the first opportunity to identify the legal standards and evidentiary burdens applicable to public-records-access proceedings that are brought pursuant to R.C. 2743.75, which became effective on September 28, 2016.[3]  While the process established for proceedings under R.C. 2743.75 may be new, the fundamental legal principles that govern disputes over access to alleged public records are not.

{¶ 10} We begin by recognizing once again the critical function served by the right of access to public records that is secured by R.C. 149.43.  "The Public Records Act reflects the state's policy that 'open government serves the public interest and our democratic system.' " *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Oho-6365, 857 N.E.2d 1208, ¶ 28, quoting *State ex rel. Dann*

_____

2.  The court of appeals rejected the prosecutor's contention that the video was also exempt from public-records release as an "infrastructure record" pursuant to R.C. 149.433(A) and (B)(2). Because the prosecutor did not appeal that ruling, that issue is not before us, and the appellate court's determination as to that issue is now final.

3.  We therefore reject the prosecutor's assertion that the appeal should be dismissed as having been improvidently accepted because it presents "nothing more than a garden variety hearsay objection and a garden variety argument about the sufficiency of the undisputed evidence."  As this case presents issues of "public and great general interest," Article IV, Section 2(B)(2)(e), Ohio Constitution, we will proceed to consider it on the merits.

*v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. "Public records are one portal through which the people observe their government, ensuring its accountability, integrity, and equity while minimizing sovereign mischief and malfeasance." *Kish v. Akron*, 109 Ohio St.3d 162, 2006-Ohio-1244, 846 N.E.2d 811, ¶ 16. Ohio's public-records statutes, "including those constituting Chapter 149, reinforce the understanding that open access to government [records] is an integral entitlement of the people, to be preserved with vigilance and vigor." *Id*. at ¶ 17. Ohio's Public Records Act " 'is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records.' " *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 7, quoting *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶ 11} Until the 2016 enactment of R.C. 2743.75, an action in mandamus under R.C. 149.43(C) was the remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *See State ex rel. Quolke v. Strongsville City School Dist. Bd. of Edn.*, 142 Ohio St.3d 509, 2015-Ohio-1083, 33 N.E.3d 30, ¶ 18, citing *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. The enactment of R.C. 2743.75 created an alternative means to resolve public-records disputes.

### A. Public-Records Dispute Proceedings under R.C. 2743.75

{¶ 12} Recognizing that disputes over public-records requests can frustrate the law's essential purpose, the General Assembly enacted R.C. 2743.75(A) "to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records" in violation of R.C. 149.43(B). It offers a forum for those who are schooled in the law as well as those who are not. A person allegedly aggrieved by a denial of access to public records in violation of R.C. 149.43(B) may now file either a mandamus complaint pursuant

to R.C. 149.43(C)(1)(b) or a public-records-access complaint in the Court of Claims pursuant to R.C. 2743.75. The person cannot pursue both remedies. *See* R.C. 149.43(C)(1), 2743.75(C)(1). And except for a court that hears a mandamus action pursuant to R.C. 149.43, "the court of claims shall be the sole and exclusive authority in this state that adjudicates or resolves complaints based on alleged violations of that section." R.C. 2743.75(A).

{¶ 13} In contrast to an action in mandamus that is generally subject to specialized pleading requirements under R.C. Chapter 2731, R.C. 2743.75(D)(1) permits the aggrieved person to file a complaint on a form prescribed by the clerk of the Court of Claims. The person shall attach copies of the original records request and any written responses or other communications relating to the request from the public office or person responsible for public records. *Id.* Upon receipt of the complaint, the clerk of the Court of Claims is to assign a special master to examine the complaint. R.C. 2743.75(D)(2). After service of the complaint, the special master immediately shall refer the case to mediation services provided by the Court of Claims unless the special master determines that the case should not be referred to mediation. R.C. 2743.75(E)(1).

{¶ 14} If the dispute is not resolved through mediation, the public office or person responsible for public records shall file a response and, if applicable, a motion to dismiss the complaint within ten days of the termination of the mediation. R.C. 2743.75(E)(2). No further motion or pleadings shall be accepted unless the special master directs in writing that a further motion or pleading be filed. *Id.* The special master shall not permit any discovery. R.C. 2743.75(E)(3)(a). The parties may attach supporting affidavits to their respective pleadings. R.C. 2743.75(E)(3)(b). The special master may require either or both of the parties to submit additional information or documentation supported by affidavits. R.C. 2743.75(E)(3)(c).

{¶ 15} Not later than seven business days after receiving the response or motion to dismiss filed by the public officer or person responsible for public records, and unless extended for good cause by an additional seven days, "the special master shall submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint." R.C. 2743.75(F)(1). The clerk of the Court of Claims shall send copies of the report and recommendation to each party not later than three days after the report and recommendation is filed. R.C. 2743.75(F)(2). Either party may file specific objections to the report and recommendation within seven days of receipt. *Id.*

{¶ 16} If neither party files objections, the Court of Claims shall promptly issue a final order adopting the report and recommendation unless it determines that there is an error of law or other defect evident on the face of the report. See R.C. 2743.75(F)(2). If either party timely objects, the other party may file a response within seven business days of receipt. *Id.* Within seven business days of filing the response, the Court of Claims shall issue a final order that adopts, modifies, or rejects the report and recommendation. *Id.*

{¶ 17} If the Court of Claims determines that the person was denied access to public records in violation of R.C. 149.43(B) and no appeal from that final order is taken, then the public office or person responsible for public records shall permit the aggrieved person to inspect or receive copies of the public records that the court ordered to be disclosed and is liable for the person's filing fee and other costs associated with the action incurred by the aggrieved person, excluding attorney fees. R.C. 2743.75(F)(3).

{¶ 18} Any appeal from a final order of the Court of Claims under R.C 2743.75 shall be taken to the court of appeals of the appellate district where the principal place of business of the public office from which the public record is requested is located. R.C 2743.75(G)(1). Such appeals are to be give precedence

over other pending matters to ensure that the court will reach a decision promptly. *Id.*

### B. Legal Standards for Proceedings Brought to Enforce Ohio's Public Records Act

{¶ 19} R.C. 2743.75 does not expressly set forth specific legal standards as to the respective burden or burdens of proof that the parties bear in proceedings to enforce the Public Records Act beyond declaring that "the special master shall submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint." R.C. 2743.75(F)(1). The lack of specific standards of proof articulated in the text of R.C 2743.75, however, does not mean that the such proceedings are without standards.

{¶ 20} We begin by recalling that the "burden of proof" is a composite burden that "encompasses two different aspects of proof: the burden of going forward with evidence (or burden of production) and the burden of persuasion." *Chari v. Vore*, 91 Ohio St.3d 323, 326, 744 N.E.2d 763 (2001). *See also Xenia v. Wallace*, 37 Ohio St.3d 216, 219, 524 N.E.2d 889 (1988); *State v. Robinson*, 47 Ohio St.2d 103, 107, 351 N.E.2d 88 (1976).

{¶ 21} The "burden of production" in a civil case requires that the plaintiff produce sufficient evidence to support the case and that the defendant produce sufficient evidence of any affirmative defenses. *Id.* at 107. The party having the burden on any given issue will lose on that issue as a matter of law if sufficient evidence is not produced. *Id.*

{¶ 22} By contrast, the "burden of persuasion" "refers to the risk * * * borne by a party if the jury finds that the evidence is in equilibrium." *Id.* "In a civil case, the party with the burden of persuasion is to persuade the trier of fact by a preponderance of the evidence, or upon some issues, by clear and convincing evidence." *Id.* The party with this burden will lose if he or she fails to persuade

the trier of fact that the alleged fact is true by such quantum of evidence as the law demands. *Id.* If the trier of fact finds itself in doubt, "it must decide the issue against the party having the burden of persuasion." *Id.*

{¶ 23} With these basic legal precepts in mind, we now consider how they apply to actions that involve alleged denials of access to public records in violation of R.C. 149.43(B), beginning with mandamus proceedings brought pursuant to R.C. 149.43(C)(1)(b).

1. *The Burdens of Production and Persuasion in Public-Records Mandamus Actions*

{¶ 24} As previously noted, until R.C. 2743.75 was enacted in 2016, an action in mandamus was the appropriate remedy to compel compliance with R.C. 149.43. To obtain this extraordinary writ, the requester must demonstrate that the requester has a clear legal right to compel the public office or person responsible for public records to allow the requester to inspect or copy the public record and that the public office or person responsible for public records has a clear legal duty to do so. *State ex rel. Cincinnati Enquirer v. Sage*, 142 392, 2015-Ohio-974, 31 N.E.3d 616, ¶ 10. "[U]nlike in other mandamus cases, '[requesters] in public records cases need not establish the lack of an adequate remedy in the ordinary course of law.'" *State ex rel. Caster v. Columbus*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 15, quoting *State ex rel. Data Trace Information Servs., L.L.C. v. Cuyahoga Cty. Fiscal Officer*, 131 Ohio St.3d 255, 2012-Ohio-753, 963 N.E.2d 1288, ¶ 25.

{¶ 25} R.C. 149.43(B)(1) establishes a clear legal right to request that identifiable public records be made available for inspection or copying. "Public record" means any record that is kept by a public office unless it falls squarely within a specific statutory exemption. *See* R.C. 149.43(A)(1). R.C. 149.43 imposes on public offices and records custodians a corresponding clear legal duty to make

a requested public record available for inspection or copying unless it falls squarely within a specific statutory exemption. *Id*.

{¶ 26} In a mandamus-enforcement action, the requester's basic burden of production is to plead and prove facts showing that he or she requested a public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available. The burden of persuasion is on the requester to establish entitlement to the extraordinary writ by clear and convincing evidence. *See State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 12; *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 16.

{¶ 27} If a public office or person responsible for public records withholds a record on the basis of a statutory exception, the "burden of production" is on the public office or records custodian to plead and prove facts clearly establishing the applicability of the exemption. In *State ex rel. Cincinnati Enquirer v. Jones-Kelly*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus, we held that exceptions to disclosure under the Public Records Act, R.C. 149.43, "are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." We further stated that "[a] custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception." *Id*., following *State ex rel. Carr v. Akron*, 112 Ohio St.3d 351, 2006-Ohio-6714, 859 N.E.2d 948, ¶ 30.

{¶ 28} In *State ex rel. Natl. Broadcasting. Co., Inc. v. Cleveland*, 38 Ohio St.3d 79, 83, 526 N.E.2d 786 (1988), we recognized several reasons for placing this burden of production on the public office or records custodian. First, unlike a party requesting disclosure, the custodian of the record has knowledge of the contents of the record. Second, since Ohio law requires the party asserting an exception to prove the facts warranting the exception, placing the burden of proof on the government is consistent with that law. Third, requiring the government to have

the burden of proof is also consistent with this court's strict construction of the exceptions of R.C. 149.43 and resolution of doubt in favor of disclosure.

{¶ 29} When the government's asserted exemption is challenged, "the court must make an individualized scrutiny of the records in question. If the court finds that [the] records contain excepted information, this information must be redacted and any remaining information must be released." *Id. at* paragraph four of the syllabus. *See also State ex rel. Warren Newspapers, Inc. v. Hutson*, 70 Ohio St.3d 619, 625, 640 N.E.2d 174 (1994) ("To the extent that respondents still assert exemptions, an individualized scrutiny of the subject records and an *in camera* inspection is required pursuant to *State ex rel. Natl. Broadcasting Co.*, *supra*, at paragraph four of the syllabus").

{¶ 30} When a public office or records custodian relies on an exemption the application of which is not apparent just from the record itself, the office must provide evidence to support the applicability of the exemption. *See*, *e.g.*, *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 401-402, 732 N.E.2d 373 (2000) (trade-secret exemption required evidence to support its application). Conclusory statements in an affidavit that are not supported by evidence are not sufficient evidence to establish the exemption's applicability. *Id*. at 401.

{¶ 31} Having reviewed the legal standards applicable to mandamus-enforcement actions, we now consider the legal standards that are applicable to public-records-access proceedings under R.C. 2743.75.

*2. The Burdens of Production and Persuasion in Public-Records-Access Actions under R.C. 2743.75*

{¶ 32} While a public-records-access proceeding brought pursuant R.C. 2743.75 may be less formalistic than a mandamus proceeding brought pursuant to R.C. 149.43(C), the nature of the relief sought—namely, access to a public record that was requested and allegedly withheld in violation of R.C 149.43(B)(1)—is functionally the same. For that reason, the direction in R.C. 2743.75(F)(1) for "the

11

ordinary application of statutory law and case law as they existed at the time of the filing of the complaint" suggests that public-records-access proceedings in the Court of Claims be consistent with the standards that are applicable to mandamus-enforcement actions.

{¶ 33} In that respect, the complainant's "burden of production" is to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available. In the case before us, there is no dispute that Welsh-Huggins made a request for public records under R.C. 149.43 and that the prosecutor denied his request. In denying the prosecutor's motion to dismiss, the special master determined that Welsh-Huggins's complaint "sets forth factual allegations and supporting correspondence that if proven entitles him to a finding of denial of access in violation of R.C. 149.43(B) and an order to produce the record." 2019-Ohio-473 at ¶ 4. The prosecutor does not seriously dispute that Welsh-Huggins satisfied this burden of production.[4]

{¶ 34} The "burden of persuasion" was at all times on Welsh-Huggins to prove his right to relief under R.C. 2743.75 by the requisite quantum of evidence. The special master found, as in mandamus actions, that the requester must establish entitlement to relief by clear and convincing evidence. 2019-Ohio-473 at ¶ 6. Welsh-Huggins does not dispute that this was the quantum of evidence necessary for him to carry his burden of persuasion. We therefore assume without deciding that his right to obtain relief under R.C. 2743.75 for the denial of access to public records in violation of R.C. 149.43(B) required clear and convincing evidence.

---

4. Contrary to the prosecutor's assertion at oral argument, the requester is not required to provide a reason for the request. Indeed, under R.C. 149.43(B)(4), no public office or person responsible for public records may limit or condition the availability of public records by requiring disclosure of the intended use of the requested public record unless specifically required or authorized by state or federal law or in accordance with R.C. 149.43(B). As we said in *State ex rel. Consumer News Servs., Inc. v. Worthington City Bd. of Edn.*, 97 Ohio St.3d 58, 2002-Ohio-5311, 776 N.E.2d 82, ¶ 45, the requester's "purpose in requesting to inspect and copy public records is irrelevant."

{¶ 35} If the public office or person responsible for public records refuses to release the requested record on the basis of a statutory exemption, its "burden of production" in the R.C. 2743.75 proceeding is to plead and prove facts establishing that the requested record falls squarely within the exemption. *See State ex rel. Cincinnati Enquirer v. Jones-Kelly*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. And if the exemption upon which the public office relies is not obviously apparent and manifest just from the content of the record itself, factual evidence to establish the application of that exemption is necessary. *See State ex rel. Besser*, 89 Ohio St.3d at 402, 732 N.E.2d 373. Unsupported conclusory statements in an affidavit are insufficient.

{¶ 36} Before we address in this case whether the prosecutor proved that the requested video recording fell squarely within the security-record exemption, we will briefly address the applicable standard of appellate review for such proceedings.

### C. Appellate Standard of Review

{¶ 37} Whether a particular record is by statute exempt from disclosure as a public record fundamentally presents an issue of law, although the application of the statutory exemption will necessarily depend on its factual application to the record in question. When an issue presents such a mixed question of law and fact, a reviewing court will independently review the legal question de novo but will defer to the trial court's underlying factual findings, reviewing them only for clear error. *See Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N,E,3d 1175, ¶ 26; *State v. Gillard*, 78 Ohio St.3d 548, 552, 679 N.E.2d 276 (1997).

{¶ 38} In prior appeals of mandamus public-records rulings, we have used this standard, in substance if not in name, by reviewing independently the disputed records and associated evidence to ascertain whether the records qualified for the claimed exemption. For instance, in *State ex rel. Rocker v. Guernsey Cty. Sheriff's*

*Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, the court of appeals, citing the R.C. 149.43(A)(2)(a) exception, denied the application for a writ of mandamus to compel the sheriff to release investigative records relating to an uncharged suspect. We independently reviewed the sealed investigative records and determined that some of the withheld records were subject to disclosure because, contrary to the appellate court's determination, not every part was inextricably intertwined with the suspect's identity. *Id*. at ¶ 14. We therefore reversed the judgment of the court of appeals and remanded the case to that court to order the disclosure of redacted records. *Id*. at ¶ 15. *See also State ex rel. O'Shea & Assocs. Co. L.P.A. v. Cuyahoga Metro. Hous. Auth.*, 131 Ohio St.3d 149, 2012-Ohio-115, 962 N.E.2d 297, ¶ 37-44 (independently reviewing and rejecting claimed exemptions). This independent review is consistent with our precedent requiring individualized scrutiny of records when a claimed exemption has been challenged. *State ex rel. Natl. Broadcasting Co., Inc.*, 38 Ohio St.3d 79, 526 N.E.2d 786, at paragraph four of the syllabus.

{¶ 39} In the specific context of public-records-access appeals filed pursuant to R.C. 2743.75(G)(1), Ohio's courts of appeals have applied the standard of appellate review applicable to such mixed questions of law and fact, reviewing the application of a claimed exemption de novo while according due deference to the trial court's factual determinations. *See Hurt v. Liberty Twp*., 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 31-33; *Sheil v. Horton*, 2018-Ohio-5240, 117 N.E.3d 194, ¶ 20.

{¶ 40} In the case before us, the appellate court did not articulate its standard of appellate review. It nevertheless appears to have independently reviewed the video and statements submitted by the prosecutor before determining that, contrary to the Court of Claims determination, the video recording was exempt as a "security record."

{¶ 41} We now proceed to consider the merits of the parties' respective contentions.

### D. The Security-Record Exemption

{¶ 42} Pursuant to R.C. 149.433(B)(1), a security record kept by a public office is not a public record under R.C. 149.43 and is not subject to mandatory release or disclosure under that section. The prosecutor argues that the video fits the security-record definition found in R.C. 149.433(A)(1): "Any record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage."

{¶ 43} The Court of Claims determined that the prosecutor had not shown, either by the content of the video alone or by the prosecutor's affidavits, that the video met this definition. Reversing that judgment, the court of appeals held that the video was a security record, although it is unclear whether it based that judgment on the video alone or on the prosecutor's affidavits. 2019-Ohio-3967, 133 N.E.3d 550, at ¶ 40-42. Despite the lack of clarity in the appellate court's opinion and analysis, we will separately address whether its judgment can be sustained based on the content of the video alone or based also on the evidence provided by the prosecutor in her affidavits.

### 1. Video Content

{¶ 44} Maintaining that the security-record nature of the video is readily apparent just by viewing it, the prosecutor contends that the court of appeals agreed when it declared: "The video shows the blind spots and places an attacker could take cover and go undetected. The video also shows the emergency response means, methods, and procedures." 2019-Ohio-3967, 133 N.E.3d 550, at ¶ 40.

{¶ 45} But that statement does not fairly represent the appellate court's opinion because the court of appeals was in fact reciting what the prosecutor's affidavit claimed were "the technical capabilities of the video security system, including the ability to zoom, rotate and isolate certain areas." *Id.* Irrespective of whether the court of appeals based its judgment on the content of the video alone or on the prosecutor's narrative description of the video's content, however, the

video does not by itself establish that it contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage.

{¶ 46} *State ex rel. Rogers v. Dept. of Rehab. & Corr.,* 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, is instructive in that we considered and rejected a similar argument. In that case, Rogers requested a prison's security-camera video related to a use-of-force incident. The Ohio Department of Rehabilitation and Correction ("DRC") denied the request, contending in part that the video was exempt as a security record as shown by the content of the video itself. The DRC contended that the captured content revealed the capabilities and vulnerabilities of the DRC security protocols and that " 'dissemination of the areas of Ohio prisons that are not capable of being monitored by security video would allow nefarious acts of violence to occur outside the security camera's scope.' " *Id.* at ¶ 16, quoting the DRC. We rejected the DRC's contention, finding that "bare allegations" of the exemption's applicability "failed to explain how the video recording at issue actually constitutes 'information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage.' " *Id.* at ¶ 19, quoting R.C. 149.433(A)(1).

{¶ 47} Just as the DRC argued in *Rogers* that the content of the video, including the emergency response to the incident, by itself showed that it was a security record, the prosecutor and the court of appeals relied on the content of the video to conclude that it was a security record. But as was the case in *Rogers*, neither the prosecutor nor the court of appeals explains how the content of this video contains "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1). *See also State ex rel. Miller v. Pinkney*, 149 Ohio St.3d 662, 2017-Ohio-1335, 77 N.E.3d 915, ¶ 4 (content of incident reports in which a local county official was identified as the reportee, complainant, or victim did not establish that they were

16

security records and thus, they were subject to release with exempt information redacted).

{¶ 48} To be sure, some public-records exemptions may be obvious just from the record's content. In *McDougald v. Greene*, ___ Ohio St.3d ___, 2020-Ohio-4268, ___ N.E.3d ___, ¶ 9, we held that a prison's most recent shift-assignment duty rosters qualified as security records. The duty rosters detailed "the identity and location of guards posted throughout the prison," *id.*, which obviously was "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," R.C. 149.433(A)(1). Likewise, because "information about the movements of a prison's *guards* would be used by the prison to ensure the security of the facility," (emphasis sic) *McDougald* at ¶ 9, that was "information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage," R.C. 149.433(A)(1).

{¶ 49} The shift-assignment duty rosters that were at issue in *McDougald* are readily distinguishable from the video at issue in *Rogers* and in this case, which also captured one event. In *McDougald*, the ongoing use of the duty rosters to protect a public office from attack for security purposes was self-evident. In the latter, the actual use of the video to protect the public from attack was not self-evident.

{¶ 50} If the applicability of a public-records exemption is not readily apparent just from the record's content, evidence providing specific factual support that goes beyond mere conclusory statements in an affidavit is required to show that the record sought falls squarely within the prescribed exception. *See State ex rel. Besser*, 89 Ohio St.3d at 400-402, 732 N.E.2d 373. We turn then to the evidence presented by the prosecutor in this case.

### 2. *Prosecutor's Evidence*

{¶ 51} Unless it is otherwise obvious from the content of the record, the proponent invoking the security-record exemption under R.C. 149.433(A)(1) must

provide evidence establishing that the record clearly contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage.

{¶ 52} Thus, in *State ex rel. Plunderbund Media, L.L.C. v. Born*, 141 Ohio St.3d 422, 2014-Ohio-3679, 25 N.E.3d 988, we held that records documenting threats against the governor were exempt as security records based on the testimonial evidence from subject-matter experts. The testimony showed that the records contained information directly used for tactically protecting or maintaining the security of a public office, which includes its officers and employees, against attack, interference, or sabotage. *Id*. at ¶ 29-30. *See also State ex rel. Ohio Republican Party v. Fitzgerald*, 145 Ohio St.3d 92, 2015-Ohio-5056, 47 N.E.3d 124, ¶ 3 (records of key-card-swipe data documenting when local county official who was the subject of verified threats entered and exited county parking facilities and buildings were directly used to protect or maintain security of a public office and were exempt as security records when originally requested, although the exemption expired once official left office, new county headquarters were established, former county headquarters were demolished, and key-card-swipe data were separately released to the media).

{¶ 53} As it relates specifically to the case at hand, Welsh-Huggins's proposition of law asserts that "[a] public office must produce competent, admissible evidence to support an assertion of an exception to the Public Records Act." The prosecutor does not take issue with this legal proposition as stated, though she does dispute the suggestion that she failed to present competent, admissible evidence to support the asserted "security-record" exemption. We agree that unless it is obvious from the record itself, in a public-records-access proceeding brought pursuant to R.C. 2743.75, a public office or records custodian asserting a statutory exemption must produce competent, admissible evidence to support the asserted exemption.

{¶ 54} Acknowledging that the records custodian in a R.C. 2743.75 proceeding bears the burden of establishing the applicability of an exception to disclosure under the Public Records Act, the prosecutor argues that "the Requester first has the burden of showing, by clear and convincing evidence, that he is entitled to that which he requests." The prosecutor's argument wrongly suggests that her responding burden of production does not arise unless and until the requester has established its burden of persuasion. Contrary to the prosecutor's contention, the assertion of a statutory exemption activates the corresponding burden of production to prove facts establishing the clear applicability of the exemption. The requester's burden of persuasion continues throughout the course of the proceeding but does not in any way relieve the public office or records custodian from having to prove the factual basis of the exemption on which it relies. The requester does not have to win its case before the public office has to make its case.

{¶ 55} The question then is whether the prosecutor proved that the video was a security record under R.C. 149.433(A)(1). The prosecutor points to the affidavits that she submitted in the Court of Claims proceedings. In the affidavit submitted with her initial supplemental response, she asserted in conclusory fashion that the video was directly used for protecting or maintaining the security of a public office, including its officers and employees. But the prosecutor's response did not explain *how* the video was used for protecting or maintaining the security of a public office against attack, interference, or sabotage.

{¶ 56} According to the prosecutor, divulging the video and its digital player software would reveal the location and configuration of the camera to its surroundings; the technical capabilities of the video security system; the panorama of the area captured by the video camera; the ability to view certain areas from different angles; the ability to zoom, rotate, and isolate certain areas and subjects; computerized optical enhancement features (such as "fish eye"); and the emergency response means, methods, and procedures used by courthouse security personnel

and other law-enforcement agencies. Disclosing that information would, in the prosecutor's view, educate future would-be attackers to courthouse security plans and potential weaknesses. The prosecutor acknowledged that to her knowledge, there had been no use of the video in any civil litigation, law-enforcement training, or other official purpose; the video had not been provided to any other agency; and the video had been viewed by her as part of the criminal investigation of the shooting of Judge Bruzzese.

{¶ 57} The concerns expressed by the prosecutor if the video were disclosed to the public are not appreciably different from those that were expressed by the DRC in *State ex rel. Rogers,* 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208. In both instances, the security-camera video captured a single incident in or near a public office and the emergency response to that incident. Regardless of whatever perceived limitations or vulnerabilities the prosecutor believes might be revealed by public viewing of the video, R.C. 149.433(A)(1) dictates that a record's security-record status is determined by the public office's actual use of the record for the stated purposes, not by a public-records requester's potential use or misuse of the record.

{¶ 58} Moreover, the video here captured an incident and emergency response that occurred outside the public office on a public street. The incident and emergency response would have been and perhaps was observed by any number of bystanders, any of whom could likely have recorded at least some portion of these events on ubiquitous personal-communication devices. That this incident and response were readily observable to the public would seemingly undermine the concern that the video might disclose something that an eyewitness would not have seen.

{¶ 59} The second affidavit submitted by the prosecutor in her second supplemental response similarly failed to explain *how* the video qualified for exemption under R.C. 149.433(A)(1). The unredacted version filed under seal

included a narrative description of the content of the recording by sequential video segments, at times identifying what a viewer could or could not see. The emergency response procedures that were actually followed by courthouse security personnel and other law-enforcement officers during this incident were said to be as set forth in the narrative description of the video content. The prosecutor additionally provided other courthouse security documents and standards and relied on the video content to identify the weaponry employed by the responding security personnel. Again, absent from this production was any explanation of how this video contained information that was "directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.433(A)(1).

{¶ 60} The prosecutor's third affidavit, filed with the third supplemental response, responded to the special master's request for certain technical information concerning the video, including its playback capabilities and its ability to be exported as a file without revealing any configuration functionality. The prosecutor there identified those technical matters for which she had personal knowledge and those technical matters for which she had either a layman's understanding or no technical knowledge at all, relying in several instances on information provided to her by the county's information and technology coordinator. The prosecutor reiterated her previously expressed concerns that disclosure of the video would reveal perceived vulnerabilities in courthouse security.

{¶ 61} On this point, the court of appeals stated, "Although the affidavit is based on hearsay and is not from an office that provides security to the courthouse, [Welsh-Huggins] did not object to the affidavit on that basis. Therefore, the

affidavit provides a basis for holding the video is a security record." 2019-Ohio-3967, 133 N.E.3d 550, at ¶ 40.[5]

{¶ 62} The hearsay evidence of which the court of appeals said Welsh-Huggins did not object, however, was utterly beside the point. It concerned technical issues concerning the ability to export and view the video for which the prosecutor lacked knowledge. The ability to export or view the video does not determine whether it is a security record as defined under R.C. 149.433(A)(1). As we have indicated, that is determined by its actual use by the public office. In that respect, the court of appeals should have been more concerned with the evidentiary law of relevance than that of hearsay.

{¶ 63} The prosecutor states that her "undisputed evidence, which was absolutely unopposed by any objection or contrary evidence, established, at the least, a probability that the subject video is a security record." But under our precedent, it is not enough to say that a record is *probably* within a statutorily prescribed exemption: the public office or records custodian must show "that the requested record falls *squarely* within the exemption." *State ex rel. Cincinnati Enquirer v. Jones-Kelly*, 118 Ohio St.3d 81, 2008-Ohio-1770, 888 N.E.2d 206, at paragraph two of the syllabus. And we must "construe R.C. 149.43 liberally in favor of broad access and resolve any doubt in favor of disclosure." *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, at ¶ 28.

{¶ 64} In this case, however, the court of appeals failed to justify its determination that the video fell squarely within the security-records exemption. As indicated previously, the court of appeals, "[c]onsidering the information in the affidavit"—without specifying which of the prosecutor's three affidavits—held that

---

5. We note that some of the prosecutor's evidence in this case was submitted under seal. Having no knowledge of its contents, Welsh-Huggins plainly would not have been in any position to object to that evidence.

the video was a security record. 2019-Ohio-3967, 133 N.E.3d 550, ¶ 41. But the appellate court's opinion does not specifically reflect any determination by that court that it was a security record *as defined under R.C. 149.433(A)(1), i.e.*, that it was "directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." Indeed, that definitional test does not appear anywhere in the appellate court's discussion of the evidence. *Id*. at ¶ 40-42.

{¶ 65} Regardless of whether the court of appeals relied upon the content of the video alone or the prosecutor's description of what it showed, including the supposed "vulnerabilities of the security measures and the response to emergencies," *id*. at ¶ 40, what the video *shows* does not prove that the video footage was *directly used* to protect or maintain the security of the public office. Just as the "capabilities and vulnerabilities" of the DRC prison-security protocols and its "plan of attack and security features" to respond to security threats in *State ex rel. Rogers*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.2d 1208, ¶ 17, 16, failed to explain *how* the video recording of the use-of-force incident was information directly used for protecting or maintaining the security of a public office, the supposed capabilities and vulnerabilities of the Jefferson County Courthouse security protocols, and the court's plan of attack and security measures to respond to security threats likewise do not prove how the video at issue here contained information that was directly used to protect or maintain the security of this public office.

{¶ 66} The court of appeals here went even further, declaring that "[t]he security aspect of a response to an emergency situation is just as important as the security to prevent an actual incident" and that minor incidents can be "used to draw people out of buildings using the response as means to make individuals or places vulnerable. That is why responses to incidents are a security record. The manner in which law enforcement and emergency personnel respond to incidents at a public office are security records." 2019-Ohio-3967, 133 N.E.3d 550, at ¶ 42.

**{¶ 67}** Aside from the fact that there was no evidence presented here to substantiate that broad assertion, it still does not answer how this video was directly used to protect or maintain the security of the public office. Moreover, the appellate court's reference to vulnerability assessments or emergency-response plans would appear to have been drawn from the security-record definitional standard applicable to *acts of terrorism*, R.C. 149.433(A)(2)(a)—an exemption that the prosecutor here did *not* invoke. By failing to specify the statutory basis for holding that the video footage here was a security record and instead offering a nonspecific rationale that appears to be drawn more from a statutory exemption that was never even at issue, the appellate court's opinion does not provide a basis for that court to substitute its judgment for that of the Court of Claims.

**{¶ 68}** We do not question the sincerity of the prosecutor's concerns that a public office's security measures and surveillance techniques are of critical importance or that disclosing information used to protect or maintain public office security against attack, interference, or sabotage arguably could diminish the effectiveness of those security measures and techniques. But " 'the General Assembly is the ultimate arbiter of public policy,' " *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 37, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Info. Network, Inc. v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 21. By " 'enumerating very narrow, specific exceptions to the public-records statute, the General Assembly has already weighed and balanced the competing public policy considerations between the public's right to know how its [government] agencies make decisions and the potential harm, inconvenience or burden imposed on the agency by disclosure.' " *State ex rel. WBNS TV, Inc.* at ¶ 36, quoting *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 172, 637 N.E.2d 911 (1994).

**{¶ 69}** Under R.C. 149.433(A)(1), a record's status as a security record is determined by the public office's actual use of the information. It is not determined

by a public requester's potential use or misuse of the information. The court of appeals here erred by holding that the video was a security record without any basis for finding that the footage contained information that was "directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage." R.C. 149.33(A)(1). We accordingly reverse the judgment of the court of appeals.

### E. Issues Unresolved in the Court of Appeals

{¶ 70} Having determined that the video was exempt from disclosure as a security record, the court of appeals declined to address the prosecutor's eighth and ninth assignments of error, finding that they were moot. 2019-Ohio-3967, 133 N.E.23d 550, at ¶ 45-46. Because we are reversing the judgment of the court of appeals, we would ordinarily remand the case to address these issues. We decline to do so here.

{¶ 71} This case concerns a public-records request that was made over three years ago on August 21, 2017. And despite R.C. 2743.75's stated purpose of providing "for an expeditious and economical procedure" to resolve public-records access disputes, R.C. 2743.75(A), this case has been in suit since 2018, prolonged in part by the special master's repeated requests for additional material information from the prosecutor. Because the unaddressed issues are not complicated and further delays will serve only to frustrate the purpose of R.C. 2743.75, we will proceed to address here the prosecutor's eighth and ninth assignments of error.

{¶ 72} After receiving the prosecutor's third supplemental response addressing the special master's queries over certain technical information concerning the video, including its playback capabilities and its ability to be exported as a file without revealing any configuration functionality, the Court of Claims ordered the prosecutor to redact from the video the image of any peace officer who was authorized to have been working undercover or in plain clothes at the time the request was made. The prosecutor's eighth assignment of error

contended that the trial court "erroneously and unlawfully required the Respondent to perform a service, by which the Respondent would have to *create a new record*, contrary to law." (Emphasis sic.) The prosecutor's ninth assignment of error contended that the trial court "erroneously and unlawfully require the Respondent to perform a service, by which the Respondent would have to *compile information* from an existing record in order to create a new record, contrary to law." (Emphasis sic.) These assignments of error lack merit.

{¶ 73} R.C. 149.43(B)(1) provides for redactions so that nonexempt portions of a public record are made available to the public: "If a public record contains information that is exempt from the duty to permit public inspection or to copy the public record, the public office or the person responsible for the public record shall make available all of the information within the public record that is not exempt." If a video is not exempt in its entirety, those portions that are exempt may be withheld by redaction, but the remainder must be released. *See, e.g.*, *State ex rel. Cincinnati Enquirer v. Ohio Dept. of Pub. Safety*, 148 Ohio St.3d 433, 2016-Ohio-7987, 71 N.E.3d 258, ¶ 45-50.

{¶ 74} As to the prosecutor's contention that the trial court's order unlawfully requires it to create a new record, R.C. 149.43(B)(6) requires a public office to permit the requester

> to choose to have the pubic record duplicated * * * upon the same medium upon which the public office or person responsible for the public record keeps it, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of the normal operations of the public office or person responsible for the public record.

If a record containing exempt and nonexempt information can, through reasonable computer programming, produce the requested output, the record is deemed to already exist for purposes of R.C. 149.43. *See State ex rel. Scanlon v. Deters*, 45 Ohio St.3d 376, 379, 544 N.E.2d 680 (1989), *overruled on other grounds*, *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d 420, 426-427, 639 N.E.2d 83 (1994), *overruled on other grounds*, *State ex rel. Caster*, 151 Ohio St.3d 425, 2016-Ohio-8394, 89 N.E.3d 598, ¶ 47.

{¶ 75} Because the video here clearly existed, the order to duplicate it with redactions that would conceal exempt information and disclose nonexempt information did not require the prosecutor to create a new record. The Court of Claims accordingly did not err by ordering that the video be made available subject to limited redactions for peace officer safety.

### III. CONCLUSION

{¶ 76} A primary purpose of Ohio's public-records act is to enable the public to see how our government agencies work, whether good or bad. The General Assembly has set the parameters for this civic right. Our duty is to ensure that the law is enforced faithfully. If the video footage of this incident would reveal vulnerabilities in courthouse security in 2017—which we doubt—the answer is not to conceal them in 2020 but rather to ensure that they have been identified and corrected.

{¶ 77} We therefore hold that in a public-records-access proceeding brought pursuant to R.C. 2743.75, a public office or records custodian asserting a statutory exemption must produce competent, admissible evidence to support the asserted exemption unless the application of the exemption is clearly obvious from the record itself. Because the court of appeals did not follow the law in this instance, we hereby reverse the judgment of the court of appeals and reinstate the judgment of the Court of Claims.

Judgment reversed.

O'CONNOR, C.J., and FRENCH, DEWINE, and STEWART, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion joined by FISCHER, J.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 78} Because I agree that appellee, the Jefferson County Prosecuting Attorney, has failed to demonstrate that security-camera footage of the shooting of a judge outside the courthouse falls within the security-record exception to the release of public records, I concur in the majority's judgment today. I write separately, however, to emphasize the simple rule of law that emanates from the court's decision.

{¶ 79} This case presents a narrow issue regarding whether security-camera footage can be a "security record" within the meaning of R.C. 149.433(A)(1) and returns us to a familiar place: statutory interpretation. As we explained long ago, "[t]he question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation." *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). Rather, "[a]n unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶ 80} The Public Records Act, R.C. 149.43 et seq., requires a public office to make copies of public records available to any person upon request, within a reasonable period of time. R.C. 149.43(B)(1). A "public record" is a record kept by a "public office," R.C. 149.43(A)(1), and the prosecuting attorney does not dispute that the security-camera footage is a record of a public office and that she is the custodian of it.

{¶ 81} R.C. 149.433(B)(1) and (2) provide that a record kept by a public office that is a security record or an infrastructure record is not a public record under R.C. 149.43 and is not subject to mandatory release or disclosure under that section. R.C. 149.433(A)(1) defines "security record" to include "[a]ny record that contains information directly used for protecting or maintaining the security of a public office against attack, interference, or sabotage."

{¶ 82} Although it might seem counterintuitive to question whether security-camera footage is a security record, the statutory definition focuses on how the public office *uses* the information in the record. It is not enough that the record contains information that is relevant to the security of a public office. It does not matter that the information in that record, if released, might make the public office vulnerable to attack, interference, or sabotage. It does not change the calculus that the record contains information that could result in a serious threat to life and limb. A record is not a security record if it does not contain information *directly used* to protect and maintain the security of the public office from attack, interference, or sabotage.

{¶ 83} In this case, the prosecuting attorney presented no evidence to show how the information in the security footage of the shooting is used to protect or secure any public office from attack, interference, or sabotage. Her affidavits are fatally defective because they are made "to the best of her information, knowledge and belief." Witnesses are required to testify from personal knowledge, Evid.R. 602, and an affidavit made to the best of the affiant's knowledge, information, and belief does not satisfy this standard, *see State ex rel. Esarco v. Youngstown City Council*, 116 Ohio St.3d 131, 2007-Ohio-5699, 876 N.E.2d 953, ¶ 15-16; *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 26; *Garner v. White*, 23 Ohio St. 192, 195-196 (1872).

{¶ 84} There is no doubt that the security cameras and the livestream of video from them are used to safeguard the courthouse. But there is nothing in the

record even suggesting that old security-camera footage in general, and the video of the shooting specifically, is used to protect or maintain the security of the courthouse. In fact, the prosecuting attorney admitted that "there has been no use of the subject video in any civil litigation, law enforcement training, or other official purpose." If it has not been used for any official purpose, then it plainly has not been used to protect or maintain the security of a public office. It therefore is not a security record exempt from disclosure under the Public Records Act.

{¶ 85} The General Assembly has not crafted an exception to the release of a record based on the custodian's subjective view that the information that the record contains could be dangerous if placed in the wrong hands. Nor is there any exception for records that reveal "security measures and surveillance techniques." *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 18. If such an exception is to be made, it is up to the General Assembly to do it—this court "may not rewrite the plain and unambiguous language of a statute under the guise of statutory interpretation," *Pelletier v. Campbell*, 153 Ohio St.3d 611, 2018-Ohio-2121, 109 N.E.3d 1210, ¶ 20.

{¶ 86} Nevertheless, the majority today reaches the right result, and I concur in its judgment reversing the judgment of the court of appeals and reinstating the judgment of the Court of Claims.

FISCHER, J., concurs in the foregoing opinion.

_____

Graydon, Head & Ritchey L.L.P., John C. Greiner, and Darren W. Ford, for appellant.

Jane M. Hanlin, Jefferson County Prosecuting Attorney, for appellee.

Faruki, L.L.P, Erin E. Rhinehart, and Christopher C. Hollon, urging reversal for amici curiae Ohio Coalition for Open Government; Ohio Association of Broadcasters; Reporters Committee for Freedom of the Press; The E.W. Scripps Company; Gannet Co., Inc.; International Documentary Association; Investigative

Reporting Workshop at American University; The Media Institute; MPA—The Association of Magazine Media; National Freedom of Information Coalition; The News Leaders Association, Society of Environmental Journalists; and Society of Professional Journalists.

Mathia H. Heck Jr., Montgomery County Prosecuting Attorney, and Nathaniel S. Peterson, Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys Association.

_____