[Cite as *Morrison v. Law Dir. of Mt. Vernon*, 2022-Ohio-1617.]

| | |
|---|---|
| JOSHUA DAVID MORRISON | Case No. 2022-00023PQ |
| Requester | Special Master Jeff Clark |
| v. | REPORT AND RECOMMENDATION |
| LAW DIRECTOR OF THE CITY OF MOUNT VERNON | |
| Respondent | |

{¶1} The Ohio Public Records Act (PRA) requires copies of public records to be made available to any person upon request. The state policy underlying the PRA is that open government serves the public interest and our democratic system. *State ex rel. Gannett Satellite Information Network, Inc. v. Petro*, 80 Ohio St.3d 261, 264, 685 N.E.2d 1223 (1997). To that end, the public records statute must be construed liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 6. This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce the PRA in the Court of Claims.

{¶2} On July 21, 2021, requester Joshua Morrison made a public records request to the Clerk of Council of the City of Mount Vernon seeking

> access to and a copy of All emails, communications and call logs of Mayor Matthew Starr, Safety Service Director Rick Dzik, City Council members, Bruce E. Hawkins, John Francis, Mike Hillier, Julia Warga, Janis Seavolt, Amber Keener, Tammy Woods and Samantha Scoles and including former City Council member Tanner Salyers regarding the recent suspension and no confidence vote of the Safety Service Director. If your agency does not maintain these public records, please let me know who does and include the proper custodian's name and address.

(Complaint at 3.) On September 17, 2021, respondent Law Director for Mount Vernon Robert Broeren, Jr., (Broeren) emailed Morrison a link to a Dropbox file containing

documents responsive to the request. (Reply at 6.) On September 27, 2021, Morrison sent an email advising Broeren that he believed the text message records of former councilmember Tanner Salyers had been omitted from this production. (*Id.* at 7.) Broeren responded that Salyers had "personally carried his cell phone records to my office and they were included in the produced records." (*Id.* at 9.)

{¶3} On January 11, 2022, Morrison filed a complaint under R.C. 2743.75 alleging denial of access to public records, specifically:

> I didn't receive the text messages of Councilmember Tanner Salyers. The records and text messages from Salyers to Councilmember Mike Hillier were not fulfilled. Mr. Hillier's text messages were included, indicating that Salyers and Hillier had a conversation.

(Complaint at 1.) Following unsuccessful mediation, Broeren filed an answer (Response) on March 24, 2022. On April 4 and April 12, 2022, Morrison filed a reply and a supplement to the reply.

**Burden of Proof**

{¶4} A requester must establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). The requester must plead and prove facts showing he sought an identifiable public record from a public office pursuant to R.C. 149.43(B)(1) and that the public office did not make the record available. *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 33. Broeren advised Morrison that he searched for, located, and produced all requested records. (Reply at 9.) A requester challenging such an assertion must show by clear and convincing evidence that one or more additional responsive records exists and was not made available. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 5-10.

**Records Made Available**

{¶5} Morrison claims that he "didn't receive the text messages of Councilmember Tanner Salyers." It is not clear whether Morrison is 1) claiming that non-identical text

messages of Salyers exist that were not contained in the provided text messages of council member Hillier, or 2) asking that a copy of identical text messages be made from both Hillier's and Salyers' cell phones. This report will address both possible meanings of Morrison's claim.

{¶6} In his abbreviated response Broeren broadly denies Morrison's claim without providing the court with any affidavit, evidence, explanation of factual background, or legal authority. (Response, *passim.*) See *State ex rel. Cordell v. Paden,* 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 5*,* 9; *State, ex rel. Bloodworth v. Toledo Corr. Inst.*, 6th Dist. Lucas No. L-21-1146, 2022-Ohio-346, ¶ 4-7; and *Ohio Records Analysis v. Ohio Dept. of Admin. Servs.*, Ct. of Cl. No. 2021-00385PQ, 2022-Ohio-316, ¶ 7, 10 for examples of public offices giving useful explanations of the non-existence of additional records. See also R.C. 149.43(B)(3).

{¶7} Taking assertion No. 2 first, it is axiomatic that there is no duty to reproduce every separate office copy of a requested record in response to a public records request. The disclosure of a single record copy is usually sufficient to satisfy a communication request if it contains all the message text, and the identities of the correspondents are known. Although copies in the hands of other correspondents may contain different metadata,[1] that information does not itself constitute a "record" unless it also "serves to document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G). A public office has no duty to produce incidental *non-record* information merely because a requester expresses an interest in it. Only if another copy of the correspondence contains additional record information, for example marginal notes or metadata that themselves meet the R.C. 149.011(G) definition

---

[1] "Metadata is '[s]econdary data that organize, manage, and facilitate the use and understanding of primary data.' Black's Law Dictionary 1080 (9th Ed. 2009)." *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 19. Examples include mailing envelopes and electronic mail headers.

of a record, must that information be provided as well. *See Bello v. Ohio Dept. of Rehab. & Corr.*, Ct. of Cl. 2020-00129PQ, 2020-Ohio-4559, ¶ 8-11. Here, Morrison does not explain how copying an identical Salyers/Hillier text exchange from Salyers' device would provide an additional record documenting the decisions, operations, or other activities of the City of Mt. Vernon. Finally, even if the text metadata did contain record information, Morrison did not ask for metadata in his request and was thus not entitled to it. *State ex rel. McCaffrey v. Mahoning Cty. Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877, ¶ 19-21.

{¶8} As to assertion No. 1, Morrison did not dispute Broeren's emailed explanation that former councilmember Salyers brought his cell phone in and produced responsive records from it. Morrison instead expressed suspicion that metadata in a provided screenshot could have been "misrepresented" and that having another screenshot from Salyers' phone "would validate and corroborate the conversation." (Reply at 11.) Notably, the screenshot at Reply p. 11 includes what appears to be source-identifying metadata: "Tanner Sa …" and "TS" and "Mobile." While Broeren fails to address Morrison's accusation that this information could be fabricated, the special master declines to accept mere suspicion as evidence that the screenshot is not part of the records from Salyers' cell phone that Broeren said he had obtained and delivered to Morrison.

{¶9} Morrison alternatively infers from the wording of the screenshot the existence and withholding of additional texts between Salyers and Hillier. However, once Broeren asserted that all requested text communication between the two had been provided, Morrison had the burden to show by clear and convincing evidence that additional text communication existed. *Cordell v. Paden* at ¶ 5-10; *Bello* at ¶ 10. Morrison's assertion that the question in the screenshot about "[t]he meeting you had in the hall prior to the meeting" implies a "subsequent conversation" is not persuasive, much less conclusive, of the existence of an additional written text message rather than a later verbal conversation. (Reply at 2-3, 11.)

**{¶10}** Considering the evidence before the court, the special master finds Morrison has not proven by clear and convincing evidence that Broeren failed to produce any additional non-identical text message or other responsive record.

**Conclusion**

**{¶11}** Upon consideration of the pleadings and attachments the special master recommends the court deny requester's claim for production of additional records. It is recommended that costs be assessed to requester.

**{¶12}** *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

_____
JEFF CLARK
Special Master

**Filed April 19, 2022**
**Sent to S.C. Reporter 5/13/22**