[Cite as *Schupp v. Ohio Dept. of Ins.*, 2021-Ohio-4179.]

| | |
|---|---|
| JASON M. SCHUPP | Case No. 2021-00199PQ |
| Requester | Special Master Jeff Clark |
| v. | <u>REPORT AND RECOMMENDATION</u> |
| OHIO DEPARTMENT OF INSURANCE | |
| Respondent | |

{¶1} Ohio's Public Records Act, R.C. 149.43, provides that upon request, a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). The Act is construed liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records. *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 7. This action is filed under R.C. 2743.75, which provides an expeditious and economical procedure to enforce alleged violations of R.C. 149.43(B).

{¶2} On March 26, 2021, requester Jason Schupp made a public records request to respondent Ohio Department of Insurance (ODI) for "licensing or authorization documentation with regard to active Ohio-domiciled captive insurance companies on file with the Ohio Department of Insurance." (Complaint at 1-2; Response at 2.) On March 29, 2021, ODI denied the request, stating: "we are unable to generate/provide this information as captive insurance companies are confidential and not subject to public record pursuant to 3964.03(H) of the Ohio Revised Code." (*Id.* at 2.) On April 9, 2021, Schupp responded to the denial by clarifying: "I am looking for a list of the names and ideally addresses of the captives licensed by the Department. Are the names really confidential?" (*Id.*) ODI did not respond. On April 14, 2021, Schupp filed this action pursuant to R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B). On June 7, 2021, ODI provided Schupp with copies of six Captive

Licenses issued to captive insurance companies, with the company names redacted. (Response at 2-3, Exh. A.) On July 27, 2021, ODI filed a combined response to the complaint and motion to dismiss (Response). On August 17, 2021, Schupp filed a reply waiving his remaining claims except to contest the redaction of the insurance companies' names from the Captive Licenses. (Reply at 1, fn. 1.) On August 24, 2021 ODI submitted unredacted copies of the six Captive Licenses under seal and filed a privilege log and affidavit in support (Sur-reply).

**Burdens of Proof**

{¶3} The requester in an enforcement action under R.C. 2743.75 bears an overall burden to establish a public records violation by clear and convincing evidence. *Hurt v. Liberty Twp.*, 2017-Ohio-7820, 97 N.E.3d 1153, ¶ 27-30 (5th Dist.). The requester bears a burden of production "to plead and prove facts showing that the requester sought an identifiable public record pursuant to R.C. 149.43(B)(1) and that the public office or records custodian did not make the record available." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St. 3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 33. ODI does not dispute that Schupp has met this burden of production but asserts that it properly withheld captive insurance company names from the Captive Licenses on the basis of public records exemptions found in R.C. 3964.03(H) and/or R.C. 3964.08.[1]

{¶4} "If the public office * * * refuses to release the requested record on the basis of a statutory exemption, its 'burden of production' in the R.C. 2743.75 proceeding is to plead and prove facts establishing that the requested record falls squarely within the exemption." *Welsh-Huggins* at ¶ 35. Exemptions (interchangeably referred to as "exceptions") must be strictly construed against the public office. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 155 Ohio St.3d 545, 2018-Ohio-5111, 122 N.E.3d 1208, ¶ 7.

---

[1] Although ODI's March 29, 2021 denial of the request was based only on R.C. 3964.03(H), R.C. 149.43(B)(3) provides that "[the initial] explanation shall not preclude the public office * * * from relying upon additional reasons or legal authority in defending an action commenced under division (C) of this section." The court may therefore consider additional exemptions raised in ODI's response pleading.

Any doubt should be resolved in favor of disclosure of public records. *State ex rel. James v. Ohio State Univ.*, 70 Ohio St.3d 168, 169, 637 N.E.2d 911 (1994).

**Motion to Dismiss**

{¶5} In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling him to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245, 327 N.E.2d 753 (1975).

{¶6} On consideration of the motion to dismiss, the special master finds that applicability of the claimed exceptions to the requested records is not conclusively shown on the face of the complaint and attachments. Moreover, as the matter is now fully briefed the arguments to dismiss are subsumed in the arguments to deny the claim on the merits. It is therefore recommended that the motion to dismiss be denied.

**Exceptions Claimed**

{¶7} A captive insurance company ("CIC") is a company that insures only the risks of its parent or affiliated companies. R.C. 3964.01(B). A CIC cannot operate in Ohio unless it obtains a captive insurance license from ODI, maintains its principal place of business in Ohio, and meets other requirements listed in R.C. 3964.03(B). As of March 26, 2021, ODI had licenses on file for six CICs. (Response at 2-3; Sur-reply, Baird Aff. at ¶ 3.)

{¶8} Unlike the other insurance companies that it regulates, ODI claims it must keep the business names of CICs unknown and unknowable to the public. ODI redacted the corporate names from Captive Licenses it provided during mediation, and argues that CICs are anonymous, effectively secret insurance companies. ODI bases its withholding of CIC names on R.C. 3964.03(H), which states:

> Except as otherwise provided in this division, documents and information submitted by a captive insurance company pursuant to this section are not subject to section 149.43 of the Revised Code, and are confidential, and may not be disclosed by the superintendent or any employee of the department of insurance without the written consent of the company.

To fall squarely under this public records exception, ODI must prove that a document or information 1) was submitted "by a captive insurance company," and 2) was submitted "pursuant to [R.C. 3964.03]."

### 1) Documents and Information Submitted by Other Sources

{¶9} Documents and information "submitted by a captive insurance company" means only what was presented by a CIC to ODI. Chapter 3964 anticipates ODI's receipt of documents and information pursuant to R.C. 3964.03 from other sources as well, e.g., outside information obtained by the superintendent pursuant to R.C. 3964.03(F)(1) through (6) regarding a CIC applicant's character, reputation, financial standing, business qualifications of officers and directors, etc.; and records of services provided by legal, financial, and examination contractors hired by the superintendent pursuant to R.C. 3964.03(I)(1). These and any other third-party records would necessarily include the name of the CIC applicant to which they pertain.

{¶10} Documents and information in records received by ODI from entities other than the CIC would not fall squarely under R.C. 3964.03(H). Nor would documents that ODI itself creates concerning CICs. Accordingly, ODI has disclosed most of the text of the Captive Licenses it has issued (Response, Exh. A), implicitly recognizing that they are not "documents * * * submitted by" CICs. ODI argues only that the business name is strictly confidential information that must be redacted from the otherwise public license:

> The company name is information submitted by the captive insurance company to ODI pursuant to R.C. 3964.03. But for the company submitting its name to ODI as information necessary to process its request for a license to do the business of captive insurance in this state in accordance with R.C. 3964.03, ODI would not have such information.

(Sur-Reply, Baird Aff. at ¶ 4, Privilege Log re: each license.) However, R.C. 3964.03(H) by its terms does not apply if the same information was also received from other sources. ODI does not specifically deny receipt of CIC business names from other sources, asserting only the above "but-for" argument as to its initial receipt of the company name.

### 2) Documents and Information of Applicants Prior to Licensing

{¶11} R.C. 3964.03(H) applies only to information submitted "by a captive insurance company." R.C. 3964.03(I)(1)[2] refers to an aspiring CIC as an "applicant" when paying the fee for processing its application for a license and paying the cost of ODI retention of legal, financial, and examination services from outside the department. The statute switches to "captive insurance company" when referring to the entity paying license *renewal* fees. ODI assumes that R.C. 3964.03(H) applies to any information submitted by an *applicant* for CIC licensure. However, "an assumption does not rise to the level of clear and convincing proof necessary to apply an exception to the Public Records Act." (Citation omitted.) *State ex rel. Summers v. Fox*, Slip Opinion No. 2020-Ohio-5585, ¶ 33.

{¶12} The question of when an entity is a CIC for purposes of R.C. 3964.03(H) is arguably made ambiguous by other language in the statute, e.g., "A *captive insurance company* seeking a license to be a *captive insurance company* in this state shall file an application * * *." (Emphasis added.) R.C. 3964.03(D). It is difficult to reconcile "captive insurance company" as the label for a CIC *applicant* unless only existing CICs from other states or countries may apply for an Ohio license. A Captive License is required before an entity may operate in Ohio as a CIC:

---

[2] "Each applicant for a license to do the business of a captive insurance company in this state shall pay to the superintendent a nonrefundable fee of five hundred dollars for processing its application for a license. The superintendent is authorized to retain legal, financial, and examination services from outside the department, at the expense of the applicant. Each captive insurance company shall annually pay a license renewal fee of five hundred dollars."

(B) A captive insurance company shall not operate in this state unless * * *
(1) The captive insurance company obtains from the superintendent a license to do the business of captive insurance in this state.

Yet Chapter 3964 also anticipates that "new" CICs may be "formed" under other provisions of the chapter.[3]

{¶13} "[If] the exemption upon which the public office relies is not obviously apparent and manifest just from the content of the record itself, factual evidence to establish the application of that exemption is necessary." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St. 3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 35. ODI provides no evidence or argument that initial business names were submitted by "captive insurance companies" as opposed to applicants lacking that formal status. As in any other business or profession, an applicant's corporate description does not confer the status of licensure or authority to operate. The special master finds that a corporation is not "a captive insurance company" within the meaning of R.C. 3964.03(H) until it is licensed to operate as such. ODI thus fails to meet its burden to prove that the business names on the Captive Licenses fall squarely under R.C. 3964.03(H).

**Voluntary Disclosure of Company Identities**

{¶14} ODI attests to six licenses issued to captive insurance companies in Ohio. (Response at 3.) Three of these licenses contain National Association of Insurance Companies (NAIC) numbers. (Response, Exh. A. p. 1-3.) ODI's web site provides links to the NAIC, which hosts a Listing of Companies Summary with company name, state, and NAIC number.[4] A search of the Summary for the NAIC numbers disclosed by ODI produces the business names of the three associated Ohio CICs.

---

[3] *See* R.C. 3964.01(B), R.C. 3964.17(A)(2)(a), and R.C. 3964.1710
[4] https://content.naic.org/sites/default/files/publication-loc-zu-listing-companies-summary.pdf (Accessed Sept. 20, 2021)

{¶15} A fourth Ohio CIC business name was publicly disclosed by ODI in a 2015 industry media article titled *Ohio announces first captive insurance company.*[5] The then-director of ODI and the CIC together disclosed the CIC's name, the name of its president, the name of its parent company, the parent's vice-president, and the nature of the parent's insured risks. This demonstrates that at the time Chapter 3964.03(H) was enacted[6] ODI did not interpret the statute to forbid disclosure of CIC names.

{¶16} Most or all Ohio CICs are also listed in public aggregators of captive insurance companies.[7] The above disclosures implicitly waive ODI's claim of comprehensive confidentiality for the names of licensed Ohio CICs.

**Records Clothed With The Public Records Cloak**

{¶17} An entity aspiring to be a CIC must first form an Ohio corporation, R.C. 3964.03(A), by filing articles of incorporation with the Ohio secretary of state. R.C. 1701.04(A). The entity must then submit a certified copy of the articles of incorporation with its CIC application. R.C. 3964.03(D)(1). The contents of Ohio articles of incorporation filed and recorded in the office of the secretary of state are expressly public. R.C. 1701.08(B).[8]

{¶18} A certified public document of one public office, used to establish the credential it documents (incorporation in compliance with R.C. Chapter 1701) for qualification of the same entity for licensure by a second public office, retains its pre-existing status as a public record of the first office. Records once established as public cannot be made confidential merely by placing them in a different location. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374, 378, 662 N.E.2d 334 (1996) (9-1-1 call recordings are public when made and are not susceptible to an otherwise

---

[5] https://www.captiveinternational.com/news/ohio-announces-first-captive-insurance-company-1272 (Accessed Sept. 22, 2021)

[6] HB 117, 130th GA, eff. Sept. 17, 2014. The original text has not been amended since.

[7] *E.g.*, https://www.bizapedia.com/search.aspx.

[8] "All persons shall have the opportunity of acquiring knowledge of the contents of the articles and other certificates filed and recorded in the office of the secretary of state * * *." R.C. 1701.08(B).

applicable general exception when later aggregated by law enforcement investigators, prosecutors, or grand juries.) "Once clothed with the public records cloak, the records cannot be defrocked of their status." *Id. Accord State ex rel. Dispatch Printing Co. v. Morrow Cty. Prosecutor's Office*, 105 Ohio St.3d 172, 2005-Ohio-685, 824 N.E.2d 64, ¶ 9-14; *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 316, 750 N.E.2d 156 (2001). *See also* 1996 Ohio Op. Atty. Gen. No. 034 (where county recorder receives and publicly records instruments in accordance with statutory directives, social security numbers included in the records are not subject to the general exemption that would otherwise apply). This would not apply to documents submitted by a CIC that are not public record at their source. However, public articles of incorporation and items of information within them may not be cloaked with secrecy when submitted to ODI in connection with further licensure.

**The Business Names Are Designed to Identify Ohio CICs**

{¶19} The General Assembly requires that each CIC include the relatively uncommon adjective "captive" as part of its business name.[9] The active Ohio corporations registered with the Ohio Secretary of State that have "captive" in their names must therefore include all Ohio CIC's.[10] CICs in the subcategory of Protected Cell Captive Insurance Companies are required to include the even more distinctive label "protected cell captive" or the abbreviation "PCC" in their name. R.C. 3964.17(J).[11] The mandated branding of CICs as "captives" within their business names is fully

---

[9] "No captive insurance company shall adopt a name that is the same, deceptively similar, or likely to be confused with, or mistaken for, any other existing business name registered in this state. The name under which a captive insurance company engages in business must contain the word 'captive.'" R.C. 3964.04.

[10] https://businesssearch.ohiosos.gov/ (Accessed Sept. 28, 2021.)

[11] Although there are two active Ohio companies in the SOS corporate listing with "protected cell captive" as part of their business names, neither company appears among the ODI CIC licenses filed under seal. Conversely, the company that ODI announced as the state's first CIC, identified in the article as a protected cell captive, does not include those words in its business name. *See* https://www.captiveinternational.com/news/ohio-announces-first-captive-insurance-company-1272 (Accessed Sept. 22, 2021) and https://businesssearch.ohiosos.gov/ (Accessed Sept. 22, 2021).

consistent with ODI's public announcement of the name of the first CIC in 2015 and with ODI's voluntary disclosure of three CIC-identifying NAIC numbers.

{¶20} Ohio public records law generally disfavors withholding information that is already known or accessible to the public. *See State ex rel. Vindicator v. Wolff*, 132 Ohio St.3d 481, 2012-Ohio-3328, 974 N.E.2d 89, ¶ 36 (In light of previous releases of case records, and internet access to the same and similar information, a sealing order "would do little, if anything, to protect the privacy of the defendants"); *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 403, 732 N.E.2d 373 (2000) (information readily ascertainable from other sources is not "trade secret"); *State ex rel. Jenkins v. Cleveland*, 82 Ohio App.3d 770, 785, 613 N.E.2d 652 (8th Dist.1992) (some of the information that would allegedly endanger life or physical safety "is available through other public records").

### R.C. 3964.08

{¶21} ODI asserts a second statutory exception, R.C. 3964.08, which provides in pertinent part:

> (A) Captive insurance companies shall be examined, evaluated, and monitored pursuant to section 3901.07 of the Revised Code.

> (B) All examination reports, preliminary examination reports or results, working papers, recorded information, documents and copies thereof produced by, obtained by, or disclosed to the superintendent or any other person *in the course of an examination made under this section* are confidential and are not subject to subpoena and may not be made public by the superintendent or an employee or agent of the superintendent without the written consent of the company, except to the extent provided in this section.

(Emphasis added.) R.C. 3901.07 provides, in pertinent part:

> (B)(1) Before issuing any license to do the business of insurance in this state, the superintendent of insurance, or a person appointed by him, may examine the financial affairs of any insurer.

> (2) The superintendent, or any person appointed by him, may examine, as often as he considers it desirable, the affairs of any insurer and of any

person as to any matter relevant to the financial affairs of the insurer or to the examination.

(3) The superintendent, or any person appointed by him, shall examine each domestic insurer at least once every three years as to its condition, fulfillment of its contractual obligations, and compliance with applicable laws, provided that he may defer making the examination for a longer period not to exceed five years.

The examination, evaluation, and monitoring made under R.C. 3901.08 occurs subsequent to the filing of an application for CIC licensure. The restrictions on disclosure contained in R.C. 3964.08(B) therefore do not apply to applications and their attachments.[12] As with R.C. 3964.03(H), this statute is limited by its express terms and does not encompass all information received or kept by ODI as to the business names of CICs or applicants.

**ODI Financial Records**

{¶22} Schupp notes that Ohio Constitution Art. XV *Miscellaneous*, § 03 *Receipts and Expenditures* requires that "An accurate and detailed statement of the receipts and expenditures of the public money, the several amounts paid, to whom, and on what account, shall, from time to time, be published, as shall be prescribed by law." ODI financial records presumably documents each CIC's $500 initial and renewal license processing fees, R.C. 3964.03(I), and the annual fees based on its premiums, R.C. 3964.13. Chapter 3964 does not expressly prohibit release of the names of CICs contained in ODI financial records. ODI cites no statutory provision to redact the names of CICs from other agency financial records of these duties, such as the Ohio treasurer.

**No Exemption Expressly Makes CIC Identities Confidential**

{¶23} The General Assembly knows how to comprehensively prohibit disclosure of business or personal names or identifying information. *See, e.g.*, R.C. 149.43(A)(1)(aa) (names of municipal utility customers); R.C. 149.43(A)(1)(gg) (name of

---

[12] Another post-application confidentiality provision appears in R.C. 3964.193.

juvenile in school vehicle traffic accident record); R.C. 149.43(A)(2)(a) (name of uncharged suspect, and witnesses to whom confidentiality reasonably promised); R.C. 149.43(A)(8)(d) and (f) (name of beneficiaries, spouses, and children of designated public service workers); R.C. 2949.221 (information or records that identify an entity participating in designated activities related to drugs used for lethal injections). In contrast, the exceptions referenced in this case are limited by their specific terms and do not expressly extend to all business name information that that ODI otherwise keeps.

{¶24} "The Public Records Act serves a laudable purpose by ensuring that government functions are not conducted behind a shroud of secrecy." *State ex rel. ESPN, Inc. v. Ohio State Univ.,* 132 Ohio St.3d 212, 2012-Ohio-2690, 970 N.E.2d 939, ¶ 40. ODI initially receives the names of CIC applicants from at least two sources – the application form filled out by the company applying for CIC licensure, and the certified articles of incorporation that the applicant attaches to the application. Reading the above-cited statutes *in pari materia*, it appears that ODI is required to keep post-application information and documents confidential, but not cloak in secrecy the otherwise public identities of companies that have applied for CIC licensure. Even were the statutory language ambiguous and in need of interpretation, the special master finds that prohibiting identification of these corporate insurance licensees would be an unreasonable and absurd result. "We must * * * construe statutes to avoid unreasonable or absurd results." *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543, 668 N.E.2d 903 (1996); R.C. 1.47(C).

{¶25} It is not apparent from the record that information and documents submitted by CICs are the sole source of their business names. Nor does ODI show that the General Assembly has prohibited the disclosure of all information as to the identity of licensed captive insurance companies. The record demonstrates that ODI has voluntarily disclosed the identities of a majority of the licensed CICs, and that the business names of all CICs are publicly available in their articles of incorporation at the

Ohio Secretary of State's Office and elsewhere. The special master concludes that ODI has not met its burden to prove that the claimed exemptions prohibit disclosure of CIC business names in the Captive Licenses authorizing their operation in this state.

**Conclusion**

{¶26} Upon consideration of the pleadings, affidavit, and attachments, the special master recommends the court order respondent to disclose copies of the six Captive Licenses with the business names of the licensees unredacted. It is recommended that costs be assessed to respondent.

{¶27} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation. Any objection shall be specific and state with particularity all grounds for the objection. A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto. R.C. 2743.75(G)(1).*

JEFF CLARK
Special Master

**Filed October 4, 2021**
**Sent to S.C. Reporter 11/29/21**