[Cite as *Cleveland Firefighters Assn. IAFF Local 93 v. Cleveland Dept. of Law*, 2021-Ohio-3602.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ASSOCIATION OF CLEVELAND
FIRE FIGHTERS IAFF LOCAL 93,　　　:

　　　Requester-Appellee,　　　:

　　　　　　　　　　　　　　　　　　　　No. 110329

v.　　　　　　　　　　　:

CITY OF CLEVELAND, DEPARTMENT
OF LAW,　　　　　　　　　　:

　　　Respondent-Appellant.　　　:

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 7, 2021

---

Civil Appeal from the Court of Claims of Ohio
Case No. 2020-00373PQ

---

## *Appearances:*

Diemert & Associates Co., L.P.A., Joseph W. Diemert, Jr., Thomas M. Hanculak, and Mark V. Guidetti, *for appellee.*

Barbara A. Langhenry, Cleveland Director of Law, William M. Menzalora, Chief Assistant Director of Law, and Timothy J. Puin, Assistant Director of Law, *for appellant* City of Cleveland, Department of Law.

LARRY A. JONES, SR., J.:

**{¶ 1}** Respondent-appellant, the city of Cleveland Law Department ("the city"), appeals from the Ohio Court of Claims' judgment overruling the city's objections to a special master's report and recommendation and adopting the report and recommendation. The Court of Claims' judgment was a mandate to the city to release all records that were made under the requestor-appellee, the Association of Cleveland Fire Fighters, IAFF Local 93's ("Local 93"), public-records request for emails that city of Cleveland Fire Chief Angelo Calvillo ("Chief Calvillo" or "the Chief") sent, received, and was copied on from January 26, 2020, through February 5, 2020.[1] For the reasons that follow, we affirm.

## Procedural and Factual History

**{¶ 2}** On May 11, 2020, Local 93 made the above-mentioned public records request to the city. On the same day the request was made, the city acknowledged the request and responded to Local 93 that:

> [t]his letter seeks to clarify your request. In order to search for the responsive, documents you are requesting, we will have to have keywords in order to use in our search. As this stands, this request is vague and overly broad. * * * Upon receipt of your clarification, the City will further respond to your public record request as required by law. If you have any questions, please reply to this email. Thank you for your attention.

**{¶ 3}** The following day, May 12, 2020, Local 93 responded to the city's request for clarification, stating that "we are seeking all email correspondence for the time-period as outlined. * * * We believe this request is reasonable and not

---

[1]The judgment has been stayed pending the outcome of this appeal.

overly broad." The city refused to search for the Chief's emails without search terms being provided, and thus, on June 11, 2020, Local 93 filed the within public-records-access action against the city in the Court of Claims pursuant to R.C. 2743.75.

**{¶ 4}** After this action was filed, in September 2020, Local 93 narrowed its request to the Chief's email correspondence dealing solely with emergency responses, such as medical emergencies, structure fires, and motor vehicle accidents from the same timeframe as previously requested, January 26, 2020, through February 5, 2020.

**{¶ 5}** On October 5, 2020, the city notified Local 93 that it had identified documents responsive to its request and that Local 93 could view the records through the city's document management system, GovQA. The records consisted of two audio files; 153 pages of emails with redactions for medical information and motor-vehicle license information; and four emails that were completely redacted based on the attorney-client privilege, with an attached redaction log. The four redacted emails are the subject matter of this appeal.

**{¶ 6}** Local 93 objected to the redaction of emails, contending that they were not subject to attorney-client privilege. The parties attempted, unsuccessfully, to mediate the dispute. The special master identified the "sole remaining issue" as the "redaction of the withheld records based on attorney-client privilege."

**{¶ 7}** The city's claim of attorney-client privilege was rooted in emails involving William Menzalora ("Menzalora"), who, at all relevant times, was the city's Chief Assistant Director of Law, Division of Public Safety. Three of the four emails at issue were sent on January 26, 2020, and the fourth was sent the following day, January 27. All four emails were relative to an early morning fire that had occurred in the city on January 26, 2020.

**{¶ 8}** For background context, the precipitating email (not at issue here) was sent on January 26, 2020, by Norman Michael ("Michael"), identified in the email as "Public Information Officer, Cleveland Division of Fire," to Chief Calvillo; three city employees were copied on the email, but Menzalora was not one of them. Michael detailed the fire and a positive outcome in the email. There were several emails thereafter among city employees relative to media coverage of the fire; Menzalora was not part of that email chain.

**{¶ 9}** The first email that is the subject of this appeal was sent later that same day, January 26, by Chief Calvillo to Michael McGrath ("McGrath"), then Director of Public Safety for the city; Menzalora was copied on the email and the subject line contained the language "Attorney-Client privilege." The email was two sentences, and as related to Menzalora, involved a scheduling matter.

**{¶ 10}** The second subject email was sent a few minutes after the first subject email. Chief Calvillo emailed Michael and copied Menzalora, among other city employees. No advice was sought, or questions were posed. Again, the subject line of the email contained the language "Attorney-Client privilege."

**{¶ 11}** A few minutes later, the third subject email was sent from the Chief to Menzalora, with McGrath copied on it, and contained the "Attorney-Client privilege" language in the subject line. The entirety of the email related to a scheduling matter.

**{¶ 12}** The final subject email was sent the following day, January 27, 2020. It was from Chief Calvillo to the Assistant Chief, Division of Fire, and Menzalora was copied on it. The subject line contained the "Attorney-Client privilege" language. The greeting of the email was solely to the Assistant Chief, and the body of the email asked him to review a document.

**{¶ 13}** On December 30, 2020, the special master filed his report and recommendation. The special master found that the city failed to meet its burden of proving that the redacted emails contained privileged attorney-client communication. In light of his conclusion, the special master recommended that the city be ordered to provide Local 93 unredacted copies of the emails. The report and recommendation were signed by the Clerk of the Court of Claims of Ohio, with the word "for" written next to the name of the special master.

**{¶ 14}** The city filed objections to the special master's report. On January 26, 2021, the Court of Claims overruled the city's objections, adopted the special master's report, and ordered release of the emails. The city now appeals, and assigns the following three assignments of error for our review:

> First Assignment of Error: The Court of Claims erred in adopting the special master's report and recommendation of December 30, 2020, (01/26/2021 Decision and Entry), because the report and

recommendation applied the incorrect burden of proof in requiring the City to show by clear and convincing evidence that the emails requested by Local 93 are exempt from the Public Records Act by virtue of the attorney-client privilege (12/30/2020 Report and Recommendation, p. 8, passim).

Second Assignment of Error: The Court of Claims erred in adopting the special master's report and recommendation of December 30, 2020, (01/26/2021 Decision and Entry), because the report and recommendation published the headers and content of emails that the City claimed were privileged, before final adjudication of the City's privilege defense, and in doing so gave misleading descriptions of the email headers that omitted the express designation of the emails as attorney-client privileged (12/30/2020 Report and Recommendation, "The Cover Emails and Attachments," pp. 4-5).

Third Assignment of Error: The Court of Claims erred in adopting the special master's report and recommendation of December 30, 2020, (01/26/2021 Decision and Entry), because the report and recommendation was not signed by the special master and therefore was not properly submitted under R.C. 2743.75 (12/30/2020 Report and Recommendation, p. 10).

## Law and Analysis

{¶ 15} Ohio's Public Records Act, codified in R.C. 149.43, provides that upon request a public office "shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). Ohio courts construe the Public Records Act liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. *State ex rel. Hogan Lovells U.S., L.L.P. v. Dept. of Rehab. & Corr.,* 156 Ohio St.3d 56, 2018-Ohio-5133, 123 N.E.3d 928, ¶ 12.

{¶ 16} As mentioned, Local 93 filed its complaint pursuant to R.C. 2743.75, which provides a statutory procedure as an alternative to a mandamus action to resolve disputes over public records requests. R.C. 2743.75(A) states:

In order to provide for an expeditious and economical procedure that attempts to resolve disputes alleging a denial of access to public records in violation of division (B) of section 149.43 of the Revised Code, except for a court that hears a mandamus action pursuant to that section, the court of claims shall be the sole and exclusive authority in this state that adjudicates or resolves complaints based on alleged violations of that section. The clerk of the court of claims shall designate one or more current employees or hire one or more individuals to serve as special masters to hear complaints brought under this section. All special masters shall have been engaged in the practice of law in this state for at least four years and be in good standing with the supreme court at the time of designation or hiring. The clerk may assign administrative and clerical work associated with complaints brought under this section to current employees or may hire such additional employees as may be necessary to perform such work.

{¶ 17} In its first assignment of error, the city contends that the special master used the wrong burden in determining whether the attorney-client privilege applied to Local 93's requests at issue. Specifically, the city contends that the special master erred based on the following in the report and recommendation: that the city had only offered conclusory assumptions in support of its position that did not "rise to the level of clear and convincing proof necessary to apply an exception to the Public Records Act." The special master cited *State ex rel. Summers v. Fox*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, in support of his conclusion.

{¶ 18} The Ohio Supreme Court recently addressed the legal standard and evidentiary burdens applicable to public record proceedings under R.C. 2743.75 in *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768. In *Welsh-Huggins*, a judge of the Jefferson County

Court of Common Pleas was shot by a man as the judge was about to enter the courthouse through a nonpublic secured entry. A camera was positioned outside the entry and captured the shooting. Andrew Welsh-Huggins ("Welsh-Huggins"), a reporter for the Associated Press, sent a public-records request to the Jefferson County Prosecutor for the video of the shooting. The prosecutor denied the request, citing multiple exemptions, including that it was a "security record" under R.C. 149.433(A)(1) and 149.433(B)(1).

{¶ 19} Welsh-Huggins filed a public-records access complaint in the Ohio Court of Claims pursuant to R.C. 2743.75. A special master found that the prosecutor failed to meet her burden to prove that any portion of the video was exempt as a security record under R.C. 149.433(A)(1). The special master recommended that the prosecutor be ordered to provide Welsh-Huggins a redacted copy of the video in any available format that Welsh-Huggins requested. The Court of Claims adopted the special master's report over the prosecutor's objections and ordered release of the video.

{¶ 20} The prosecutor filed an appeal to the Seventh District Court of Appeals pursuant to R.C. 2743.75(G)(1). The court of appeals reversed the judgment of the Court of Claims, holding that the video was exempt from disclosure as a security record under R.C. 149.433(A)(1) and 149.433(B)(1). *Welsh-Huggins v. Office of the Pros. Atty., Jefferson Cty.*, 2019-Ohio-3967, 133 N.E.3d 550, ¶ 1 (7th Dist.). The court of appeals found no error in requiring the prosecutor to prove that the video fell squarely within the claimed exemption. *Id.*

at ¶ 50. The Ohio Supreme Court accepted Welsh-Huggins's appeal and agreed to consider the following proposition of law: "A public office must produce competent, admissible evidence to support an assertion of an exception to the Public Records Act." *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 8.

{¶ 21} The Ohio Supreme Court recognized that aside from stating that the "'special master shall submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint,'" R.C. 2743.75 does not set forth specific burdens of proof. *Id.* at ¶ 19, quoting R.C. 2743.75(F)(1). Thus, the court clarified what the standards are.

{¶ 22} The court noted that in a mandamus public-records action, "the burden of persuasion is on the requester to establish entitlement to the extraordinary writ by clear and convincing evidence." *Id.* at ¶ 26. Then, "[i]f a public office or person responsible for public records withholds a record on the basis of a statutory exception, the 'burden of production' is on the public office or records custodian to plead and prove facts clearly establishing the applicability of the exemption." *Id.* at ¶ 27.[2]

{¶ 23} In regard to public record actions brought under R.C. 2743.75, as is the case here, the court found that "public-records-access proceedings in the Court of Claims [are] consistent with the standards that are applicable to mandamus-

---

[2] *See id.* at ¶ 20-22 for the court's discussion of the two different aspects of "burden of proof," that are "burden of production" and "burden of persuasion."

enforcement actions." *Id.* at ¶ 32. Thus, the court found that the "'burden of persuasion' was at all times on Welsh-Huggins to prove his right to relief under R.C. 2743.75 by the requisite quantum of evidence." *Id.* at ¶ 34. The court noted that, the "special master found, as in mandamus actions, that the requester must establish entitlement to relief by clear and convincing evidence." *Id.* Welsh-Huggins did not dispute that finding, and the court stated that "[w]e therefore assume without deciding that his right to obtain relief under R.C. 2743.75 for the denial of access to public records in violation of R.C. 149.43(B) required clear and convincing evidence." *Id.*

{¶ 24} The court then considered the respondent's "burden of production" if the respondent office or person refuses to release the requested records on the ground of a statutory exemption and held that the burden is: "to plead and prove facts establishing that the requested record falls squarely within the exemption." *Id.* at ¶ 35. Thus, the city is correct that its burden was not clear and convincing evidence; rather, the city was required to prove that the subject emails fell squarely within the attorney-client-privilege exemption.

{¶ 25} We find the above to be true despite the special master's citation to *State ex rel. Summers*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, for the proposition that the city had to prove the exception by clear and convincing evidence. In *State ex rel. Summers*, the relator, Charles Summers ("Summers") sought records from a prosecutor's office and sheriff's office (collectively "the county"); the records regarded his son who had been prosecuted and imprisoned

for sexually oriented offenses.  The county denied the requests, contending that Summers was acting on his son's behalf and, as such, had to follow the same requirements an inmate would have to follow when seeking records, and had not done so.  The county cited a Facebook page that the son's parents set up to "seek justice" for him and contended that the son directed his parents as to what to post.

{¶ 26}  In considering whether Summers was a designee for his son, the Supreme Court of Ohio stated the following:

> Essentially, the county invites us to assume that if [the son] was directing his father in the operation of the Facebook page, then he must have also been the driving force behind the requests.  But an assumption does not rise to the level of clear and convincing proof necessary to apply an exception to the Public Records Act.

*Id.* at ¶ 33.

{¶ 27}  In his report and recommendation here, the special master quoted the above *State ex rel. Summers* language — "an assumption does not rise to the level of clear and convincing proof necessary to apply an exception to the Public Records Act" — in finding that the city's claimed exemption based on attorney-client privilege was "conclusory."  Court of Claims Record at 26, p. 8.

{¶ 28}  But in *State ex rel. Summers*, 163 Ohio St.3d 217, 2020-Ohio-5585, 169 N.E.3d 625, the Ohio Supreme Court used the clear and convincing language in the context of determining whether Summers was a designee for his son. Further reading of the court's opinion demonstrates that it applied the same standard as it did in *Welsh-Huggins*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170

N.E.3d 768, in determining whether the custodian had an exemption to a public records request. Specifically, the court held in *State ex rel. Summers* that,

> Because the county has invoked a number of statutory exceptions to the Public Records Act's disclosure requirement, it bears the burden of proof with respect to those exceptions. *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 398, 732 N.E.2d 373 (2000). To meet this burden, *a custodian must prove that the requested records fall squarely within the exception. State ex rel. Miller v. Ohio State Hwy. Patrol*, 136 Ohio St.3d 350, 2013-Ohio-3720, 995 N.E.2d 1175, ¶ 23.

(Emphasis added.) *State ex rel. Summers* at ¶ 28.

{¶ 29} Thus, both *Welsh-Huggins* and *State ex rel. Summers* cite the same burden for a custodian claiming an exception: that the records fall squarely within the exception.

{¶ 30} In a case similar to the within case, the Court of Claims modified a special master's report and recommendation on the issue of the burden of proof applicable to a defense based on the attorney-client privilege. *White v. Dept. of Rehab. & Corr.*, Ct. of Cl. No. 2018-00762PQ, 2019-Ohio-472. The Court of Claims found as follows:

> The special master's application of the standard of proof relative to [ODRC's] claim of attorney-client privilege is erroneous because the special master applied a clear-and-convincing standard of proof, instead of applying a preponderance of the evidence standard of proof relative to ODRC's claim of an exception to disclosure.

*Id.* at ¶ 15.

{¶ 31} The Court of Claims conducted a review of the subjected records for attorney-client privilege under the standard set forth by the Ohio Supreme Court in *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-

1508, 824 N.E.2d 990, and concluded that the records were protected by the privilege. The requestor appealed to the Tenth Appellate District. *White v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 19AP-85, 2020-Ohio-386.

{¶ 32} Regarding the burden of proof for a claimed exemption for a public records request on the ground of attorney-client privilege, the Tenth Appellate District held the following:

> It is the well-settled law of Ohio that "[e]xceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception. A custodian does not meet this burden if it has not proven that the requested records fall squarely within the exception."

*Id.* at ¶ 21, quoting *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus. The court then went on to analyze the records for attorney-client privilege under the factors set forth in *Leslie*.

{¶ 33} As mentioned, the special master in the within case did reference the incorrect burden — clear and convincing evidence — relative to the city's claimed exemption of the records on the ground of attorney-client privilege. However, when the report is read in toto, it is clear that the special master applied the correct burden; that is, whether the records fell squarely within the attorney-client privilege.

{¶ 34} Specifically, the special master stated the correct burden elsewhere in his report and recommendation: "If the public office withholds an identified

record on the basis of a public-records exemption, the public office then carries the burden to prove that the record falls squarely within the exemption." Court of Claims Record at 26, p.2. Not only did the special master reference the correct burden the city had, he analyzed the subject emails under the factors set forth for determining attorney-client privilege in *Leslie*, 105 Ohio St.3d 262, 2005-Ohio-1508, 824 NE.2d 990. Thus, despite the special master's reference elsewhere in his report to the city's burden being that of clear and convincing evidence, the special master actually articulated and used the correct standard in reviewing the emails.

{¶ 35} We now conduct a de novo review of the emails. *See Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13 ("Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. * * * However, if the discovery issue involves an alleged privilege, * * * it is a question of law that must be reviewed de novo.").

{¶ 36} In *Leslie*, the Supreme Court of Ohio set forth an eight-part test for the attorney-client privilege, stating:

> Under the attorney-client privilege, "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] instance permanently protected (7) from disclosure by himself [,herself,] or by the legal adviser, (8) unless the protection is waived." *Reed v. Baxter* (C.A. 6. 1998), 134 F.3d 351, 355-356; *Perfection Corp. v. Travelers Cas. & Sur.*, 153 Ohio App.3d 28, 2003-Ohio-3358, 790 N.E.2d 817, ¶ 12 [(8th Dist.)]. Except under circumstances not relevant here, only the client can waive the privilege.

*Id.* at ¶ 21.

**{¶ 37}** Upon review, the first three subject emails did not fall squarely within the attorney-client privilege. They did not seek any kind of legal advice. For example, the one email naming Menzalora as the primary recipient related to a scheduling matter.

**{¶ 38}** The fourth email that was from Chief Calvillo to the Assistant Chief, Division of Fire, is the trickiest. Although Menzalora was copied on the email, the greeting of the email was solely to the Assistant Chief, and the body asked only for the Assistant Chief's review of a document.

**{¶ 39}** The attorney-client privilege does not require that the communication pertain purely to legal advice, but "'if a communication between a lawyer and client would facilitate the rendition of legal services or advice, the communication is privileged.'" *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991). However, simply copying an attorney on an email does not make it an attorney-client-privileged communication. But sometimes interests intertwine. For example, legal and business interests can intertwine. In a legal and business context, when the dominant purpose of a communication is a business decision and not legal advice, then "the communication cannot be insulated from discovery just by sending a copy of it to a lawyer." *Waters v. Drake*, S.D.Ohio No. 2:14-cv-1704, 2015 U.S. Dist. LEXIS 164179, 4 (Dec. 8, 2015). *See also McCall v. Procter & Gamble Co.*, S.D.Ohio No. 1:17-cv-406, 2019 U.S. Dist. LEXIS 143161, 4 (Aug. 22, 2019) ("A

communication does not obtain privileged status simply because an attorney is copied.").

{¶ 40} The city cites a recent Ohio Supreme Court case, *State ex rel. Hogan Lovells U.S., L.L.P. v. Ohio Dept. of Rehab. & Corr.*, Slip Opinion No. 2021-Ohio-1762, for the proposition that even though an email does not specifically seek legal advice, it must be viewed in context if it is part of an ongoing discussion that involves legal counseling. *Hogan Lovells* is distinguishable from this case.

{¶ 41} *Hogan Lovells* involved a requestor seeking documents from the Ohio Department of Rehabilitation and Correction ("DRC") relating to drugs intended to be used or considered for use in lethal injections. Relevant to this case, the court considered the request "regarding any considered, proposed, or current execution protocols, regulations, guidelines, checklists, notes, or other documents that instruct or direct the carrying out of an execution." *Id.* at ¶ 7. DRC withheld the following as being attorney-client and work-product privileged:

> (1) a summary of execution-protocol options prepared by DRC's chief counsel, (2) a May 16, 2019 e-mail and attached document sent by DRC's chief counsel to two DRC employees, (3) a May 21, 2019 e-mail and attached document sent by a DRC employee to DRC's chief counsel, and (4) a June 11, 2019 e-mail and attached document sent by DRC's chief counsel to the governor's chief counsel.

*Id.*

{¶ 42} The requestor did not "squarely challenge DRC's claim that the four records, at least to some extent, are covered by the attorney-client or attorney-work-product privilege." *Id.* at ¶ 13. The requestor contended that whatever portion of the records was not exempt should be discoverable, however. The DRC,

on the other hand, contended that the entirety of a record should be withheld when it contains privileged information that is "inextricably intertwined" with nonprivileged information. *Id.* at ¶ 14.

{¶ 43} The court agreed with DRC, stating that the "attorney-client privilege applies to communication that facilitates an attorney's provision of legal services or advice to a client." *Id.* at ¶ 17, citing *Toledo Blade*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, at ¶ 27. "The privilege is not restricted just to the provision of pure legal advice, but also covers the attorney's own factual investigation when that investigation is 'incident to or related to any legal advice' the attorney gives." *Id.*, quoting *Toledo Blade* at ¶ 29.

{¶ 44} In this case, the special master found that the emails addressed administrative, not legal, matters. In considering the fourth email, we agree. The email was directed to the assistant fire chief and sought the assistant's review. Menzalora was copied on the email, but no legal advice, questions, or comments were sought from him or posed to him. Unlike in *Hogan Lovells*, the subject emails in this case were not "'incident to or related to any legal advice'" sought from or given by Menzalora. *Id.*, quoting *Toledo Blade* at *id.*

{¶ 45} Further, the header in the subject line of the emails that they were "Attorney-Client privilege" do not make them so. The content of the emails has to involve attorney-client-privileged information, and our de novo review shows that they did not contain privileged information.

{¶ 46} In light of the above, the first assignment of error is overruled.

{¶ 47} For its second assignment of error, the city contends that the special master and the Court of Claims erred by publishing the headers of the emails and descriptions of the emails, because they contained privileged information. According to the city, this information should not have been published before the matter was fully adjudicated. Further, the information from the emails that was published omitted the city's label of "attorney-client privilege"; the city contends that "[i]f any language from the emails could be published, it would be this language alone."

{¶ 48} The city suggests that, even if we agree with the lower court's conclusion regarding the attorney-client privilege, "the Court of Claims decision should be reversed in order to protect the right of a litigant to assert the privilege until final adjudication." According to the city, "[s]triking the report and recommendation in part or toto from the record would be an appropriate remedy, albeit an incomplete one, because no judicial act at this point can 'unring the bell.'"

{¶ 49} Upon review, we disagree with the city's contentions. Neither the special master nor the Court of Claims revealed the substantive content of the emails; rather, they merely described the contents. Further, after its in camera review of the emails, the court appropriately placed them under seal for our review.

{¶ 50} In light of the above, the second assignment of error is overruled.

{¶ 51} In its third assignment of error, the city contends that the Court of Claims improperly adopted the special master's report and recommendation

because it was signed by the clerk of court and not the special master. The city cites R.C. 2743.75(F)(1) in support of its contention. That provision reads in relevant part that, "the special master shall submit to the court of claims a report and recommendation based on the ordinary application of statutory law and case law as they existed at the time of the filing of the complaint." According to the city "shall submit" means that the special master "shall sign" the report and recommendation. We disagree.

{¶ 52} The record demonstrates that the Clerk of Court for the Court of Claims ("the Clerk") is a magistrate. As noted by the Court of Claims in overruling the city's objections, a magistrate and a special master are both judicial officers. Under R.C. 2743.75(A), the Clerk of Court for the Court of Claims has authority to designate employees or hire one or more individuals to serve as special masters in public-record disputes. In this case, the Clerk appointed the special master who prepared the report and recommendation. On this record, we do not find that because the Clerk signed for the special master, the report and recommendation is void.

{¶ 53} The third assignment of error is overruled.

{¶ 54} Finally, Local 93 requests that we grant it attorney fees under R.C. 2743.75(G)(2), which provides as follows:

> If a court of appeals in any appeal taken under division (G)(1) of this section by the public office or person responsible for the public records determines that the public office or person denied the aggrieved person access to the public records in violation of division (B) of section 149.43 of the Revised Code and obviously filed the

appeal with the intent to either delay compliance with the court of claims' order from which the appeal is taken for no reasonable cause or unduly harass the aggrieved person, the court of appeals may award reasonable attorney's fees to the aggrieved person in accordance with division (C) of section 149.43 of the Revised Code. No discovery may be conducted on the issue of the public office or person responsible for the public records filing the appeal with the alleged intent to either delay compliance with the court of claims' order for no reasonable cause or unduly harass the aggrieved person. This division shall not be construed as creating a presumption that the public office or the person responsible for the public records filed the appeal with the intent to either delay compliance with the court of claims' order for no reasonable cause or unduly harass the aggrieved person.

{¶ 55} Upon review, we decline to award attorney fees to Local 93. The record does not demonstrate that the city "obviously filed the appeal with the intent to either delay compliance with the Court of Claims' order from which the appeal is taken for no reasonable cause or [to] unduly harass" Local 93.

{¶ 56} In sum, although the special master made a reference to the incorrect burden of proof at one point in his report, when his report is read in full, he also stated the correct burden of proof and applied it. Upon our de novo review of the subject emails, they are not exempt from production under the attorney-client privilege. Further, neither the special master nor the Court of Claims improperly published the substantive nature of the subject emails. And the special master's report was not void because the Clerk of Courts for the Court of Claims signed the report on behalf of the special master. There is no evidence that the city filed this appeal for purposes of delay or harassment and, therefore, Local 93's request for attorney fees is denied.

**{¶ 57}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR