**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howard v. Shuler*, Slip Opinion No. 2025-Ohio-4964.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-4964

THE STATE EX REL. HOWARD *v.* SHULER.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Howard v. Shuler*, "Slip Opinion No." 2025-Ohio-4964.]**

*Mandamus—Public-records requests—S.Ct.Prac.R 12.06(B) did not permit untimely filing of additional evidence that respondent inadvertently failed to file—Public office's conclusory statements failed to prove that investigation report was subject to public-records exemption—Public office failed to submit evidence proving that security-video footage was subject to public-records exemption for infrastructure records—Records custodian improperly responded to public-records request by telling requestor to request record of grievance disposition from someone else—Inmate did not have cognizable claim in mandamus regarding information provided before mandamus complaint was filed—Inmate failed to prove by clear and convincing evidence that records custodian had received inmate's remaining public-records requests, and thus, there was no duty for custodian to respond—Writ granted in part and denied in part, inmate*

*awarded $1,000 in statutory damages, and inmate's request for court costs denied.*

(No. 2024-0880—Submitted March 11, 2025—Decided November 4, 2025.)

IN MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ. FISCHER, J., concurred in part and dissented in part and would not award statutory damages.

**Per Curiam.**

{¶ 1} In an amended complaint, relator, Jeffery L. Howard, an inmate at Mansfield Correctional Institution ("MANCI"), requests a writ of mandamus ordering respondent, Lorri Shuler, to provide Howard with copies of various records in response to public-records requests that he made in 2021 and 2024 related to an incident that occurred at North Central Correctional Complex ("NCCC"). Howard further requests that we order Shuler to provide him with access to the kites[1] in which he made those public-records requests. He also seeks statutory damages and requests that court costs and fees be charged against Shuler.

{¶ 2} We previously granted an alternative writ, setting a schedule for the submission of evidence and briefs, and granted Howard leave to submit corrections and additions to his complaint. 2024-Ohio-3227.

{¶ 3} In addition to his merit brief, Howard filed a request for leave to supplement his request for damages. Both parties filed evidence, and Howard subsequently moved to strike Shuler's evidence. In response, Shuler filed a motion

_____

1. "A kite is a type of written correspondence between an inmate and prison staff." *State ex rel. Griffin v. Szoke*, 2023-Ohio-3096, ¶ 3.

for leave to file corrected evidence.[2]  Howard then filed a motion to strike Shuler's motion.

{¶ 4} For the reasons explained below, we deny all the motions, grant the writ of mandamus as to some records, deny the writ of mandamus as to other records, award $1,000 in statutory damages to Howard, and deny his request related to court costs and fees.

### I.  FACTS AND PROCEDURAL HISTORY

### A.  Identification of Shuler and the Involved Institutions

{¶ 5} Howard identifies Shuler in the caption of his amended complaint as the inspector of institutional services at NCCC, and Shuler acknowledges in her merit brief that Howard's complaint was filed against "an employee of the [NCCC] which is operated by [Management & Training Corporation ("MTC")]." Additionally, a kite log submitted in this case shows that Shuler responded to one of Howard's kites after it was forwarded from MANCI to NCCC, which further suggests that Shuler works at NCCC.

{¶ 6} Despite this, Shuler attests in her affidavit that she "was and is an employee of [MTC] at [MANCI] during the time of Jeffrey Howard's [July 2021] public-records request."  Based on all the information presented, it seems more likely that Shuler works for MTC at NCCC.

### B.  Public-Records Requests and Responses

{¶ 7} In July 2021, Howard submitted a public-records request by electronic kite for records regarding an incident that occurred at NCCC on March 29 and 30, 2021.  Howard stated in the request that he was directed to contact the inspector's office for additional information concerning the incident.  He requested (1) "copies of all the investigation reports [regarding the incident]," (2) "the grievance disposition from the [NCCC] inspector," (3) "the camera/video feed

---

2. Apparently, Shuler received Howard's motion to strike her evidence and filed her motion for leave to file corrected evidence in response before Howard's motion to strike was filed by the clerk.

pointed directly at the NCCC/MTC holding cells [in segregation] for Monday, March 29, 2021, approximately 5:30 p.m. through Tuesday, March 30, 2021, approximately 10:30 a.m.," and (4) "who ordered [Howard] to segregation on Monday March 29, 2021."

{¶ 8} The kite log states that Howard's kite was forwarded from MANCI to NCCC that same day. The next day, Shuler provided the following response:

> Be advised that you are not entitled to the investigation report and you will not receive a copy of that. As for grievances and dispositions you need to request those copies from your current inspector. You will also not receive video footage that is not permitted to inmates and you have been advised of this multiple times.

{¶ 9} In March 2024, Howard submitted an electronic kite to the MANCI warden's administrative assistant addressed to the public-records officer at MANCI, with the summary "SECOND PUBLIC RECORDS REQUEST." (Capitalization in original.) Howard requested that the kite be forwarded to the portal for the public-records officer for NCCC. Similar to the July 2021 kite, the March 2024 kite requested copies of the investigation report related to an April 1, 2021 grievance, the video footage from the camera pointed at the segregation holding cells for the same date and time range, a copy of any report related to the March 29 and 30, 2021 incident, and the name of the staff person who ordered Howard to be placed in the holding cell.

{¶ 10} In a response sent eight days later, "J. Nelson" acknowledged receipt of Howard's kite and stated that a separate written response would be provided within a reasonable period. Nelson further informed Howard that MANCI did not have a warden's administrative assistant at that time and that MANCI was working

as quickly as possible to fill the vacant position. The evidence submitted by Howard does not show any further response through June 22, 2024. Additionally, there is no evidence indicating that the kite was forwarded or that Shuler or anyone else at NCCC was involved in responding to it.

{¶ 11} In May 2024, Howard sent the MANCI warden's administrative assistant another electronic kite addressed to the public-records officer at MANCI. He again asked in that kite that his public-records request be transferred to the NCCC public-records officer's portal. He also requested that the NCCC public-records officer provide him with (1) "a copy of the 'inmate confidential statements' related to conduct report NCCI-21-002555" and (2) "a copy of the DRC 1000's (incident reports) completed in relation to conduct report NCCI-21-002555." In a staff response sent four days later, "Plank K." stated that he had forwarded Howard's request to NCCC. However, the kite log itself does not show that the kite was transferred or that Shuler or anyone else at NCCC was involved in handling it.

{¶ 12} In his affidavit, Howard attests that he has not received any of the records requested in his July 2021, March 2024, or May 2024 public-records requests.

### C. This Mandamus Action

{¶ 13} In June 2024, Howard initiated this original action for a writ of mandamus by filing his complaint. We granted Howard's motion for leave to submit corrections and additions to his complaint and granted an alternative writ, setting a schedule for the submission of evidence and briefs. 2024-Ohio-3227.

{¶ 14} Howard submitted his merit brief on September 16, 2024, and both parties filed evidence that same day. Howard also submitted a request for leave to supplement his request for damages.

{¶ 15} On October 3, 2024, Shuler filed a motion for leave to file corrected evidence. Shuler stated in that motion that her counsel had realized—upon being

served with Howard's motion to strike Shuler's evidence—that counsel had filed an incomplete copy of Shuler's evidence. Though received by Shuler sometime prior to October 3, Howard's motion to strike was not filed with the clerk until October 8. Howard also filed a motion to strike Shuler's motion for leave to file corrected evidence.

## II. ANALYSIS

### A. Pending Motions

*1. Howard's request for leave to supplement his request for damages*

{¶ 16} In his first motion, Howard requests leave to amend again the portion of his amended complaint pertaining to statutory damages. In his amended complaint, he requested a total of $2,000 in statutory damages. Now, he seeks leave to request a total of $7,000 in damages.

{¶ 17} In original actions filed in this court, the Civil Rules apply unless they are clearly inapplicable. S.Ct.Prac.R. 12.01(A)(2)(b). Because Howard has already amended his complaint once, he may do so now "only with the opposing party's written consent or the court's leave." Civ.R. 15(A). "The court shall freely give leave when justice so requires." *Id*.

{¶ 18} Justice does not require that we grant leave in this case because, as will be determined below, Howard is entitled to only $1,000 in statutory damages. Even if Howard were entitled to additional damages, he could have requested that amount in either his original complaint or his amended complaint. Therefore, we deny Howard's request for leave to supplement his request for damages.

*2. Shuler's motion for leave to file corrected evidence*

{¶ 19} In her motion, filed October 3, 2024, Shuler asserts that on the day her counsel submitted her evidence, her counsel's firm experienced a computer outage. In an attempt to timely file the evidence, her counsel's paralegal worked remotely and employed "various workarounds" to gain internet access and file the evidence. As a result of the unfamiliar work environment, the paralegal

"inadvertently attached [an] incomplete PDF document to the filing." Shuler's motion is supported by affidavits from the firm's office manager and the paralegal attesting to these facts.

{¶ 20} Shuler's evidence submission is clearly incomplete. It states that six exhibits were being submitted, but only one exhibit was actually filed. However, the filed exhibit—an affidavit—is itself complete even though the evidence it was intended to authenticate was not submitted with it. Accordingly, Shuler does not seek leave to correct the evidence that she submitted. Rather, she seeks leave to submit additional evidence that was accidentally excluded from the original evidence submission.

{¶ 21} However, our rules do not permit a respondent to file additional evidence after the deadline for the submission of evidence has passed. *See* S.Ct.Prac.R. 12.06(B) (permitting a *relator* to move for leave to file rebuttal evidence); *see also State ex rel. Ware v. Sheldon*, 2025-Ohio-1768, ¶ 9 (denying a respondent leave to file rebuttal evidence or other additional evidence after the deadline for the submission of evidence). The deadline for the submission of evidence was September 17, 2024. Therefore, we deny Shuler's motion.

### 3. *Howard's motion to strike Shuler's evidence*

{¶ 22} Howard moves to strike Shuler's evidence on the basis that he received an incomplete copy of it. He asserts that he received only the cover page, the page listing the exhibits, and Shuler's affidavit and that he did not receive the affidavits of Nelson and Plank. However, as noted above, only part of Shuler's evidence was submitted to this court. Howard was served with the same incomplete evidence that was filed in this court. Therefore, we deny his motion to strike the evidence Shuler filed on September 16, 2024.

### 4. *Howard's motion to strike Shuler's motion for leave to file corrected evidence*

{¶ 23} Howard also moves to strike Shuler's motion for leave to file corrected evidence for several reasons. First, he alleges that Nelson and Plank—

whose affidavits Shuler seeks leave to file—are not employees of MTC. He also argues that the notary who notarized Nelson's and Plank's affidavits "fraudulently and recklessly certified and authenticated inaccurate and untruthful statements" within them.

{¶ 24} Because we deny Shuler's motion for leave to file corrected evidence, the affidavits of Nelson and Plank have not been admitted into evidence. Therefore, to the extent that Howard moves to strike those affidavits, the motion to strike is moot.

{¶ 25} Howard also argues that the 22-day delay between when the parties' evidence was due and when he received Shuler's motion on October 9, 2024, is not the kind of oversight or clerical error that constitutes excusable neglect. Although Howard's argument presents a potential reason why Shuler's motion to file corrected evidence should be denied, it does not present grounds for striking the motion. Therefore, we deny Howard's motion to strike Shuler's motion for leave to file corrected evidence.

**B. Writ of Mandamus**

{¶ 26} "[U]pon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." R.C. 149.43(B)(1). A writ of mandamus is an appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. Wells v. Lakota Local Schools Bd. of Edn.*, 2024-Ohio-3316, ¶ 11; R.C. 149.43(C)(1)(b). To obtain the writ, "the requester must prove by clear and convincing evidence a clear legal right to the record and a corresponding clear legal duty on the part of the respondent to provide it." *State ex rel. Griffin v. Sehlmeyer*, 2021-Ohio-1419, ¶ 10.

{¶ 27} In his amended complaint, Howard requests a writ of mandamus regarding two or three public-records requests that he submitted by kite: the amended complaint directly requests a writ of mandamus based on the requests

made in Howard's July 2021 and May 2024 kites, but as discussed below, it is unclear whether Howard requests mandamus relief based on his March 2024 kite. Additionally, Howard requests that Shuler be ordered to provide the three above-mentioned kites in which he made his public-records requests.

### 1. Howard's July 2021 kite

{¶ 28} In his July 2021 kite, Howard requested copies of (a) all investigation reports regarding the March 2021 incident, (b) the grievance disposition from the NCCC inspector, (c) the video footage from the camera pointed at the NCCC holding cell, and (d) the identity of the person who ordered him to segregation on the day of the incident.

### a. Investigation reports

{¶ 29} In her merit brief, Shuler appears to acknowledge that at least one investigation report exists, but she contends that Howard is not entitled to a copy of it, because it is exempt from disclosure under R.C. 149.43(A)(2) as a confidential law-enforcement investigatory record. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish" that "the requested records fall squarely within the exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 2008-Ohio-1770, paragraph two of the syllabus. When records are withheld on the basis of a statutory exemption, "the 'burden of production' is on the public office or records custodian to plead and prove facts clearly establishing the applicability of the exemption." *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 2020-Ohio-5371, ¶ 27.

{¶ 30} R.C. 149.43(A)(2) defines the term "confidential law enforcement investigatory record," which is excluded from the definition of a "public record" under R.C. 149.43(A)(1)(h). R.C. 149.43(A)(2) provides:

"Confidential law enforcement investigatory record" means any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following:

. . .

(d) Information that would endanger the life or physical safety of law enforcement personnel, a crime victim, a witness, or a confidential information source.

{¶ 31} In her merit brief, Shuler asserts that the requested investigation reports, "if released to [Howard], would contain information that would endanger the life or physical safety of a confidential informant." However, Shuler did not submit any evidence in support of this assertion. Additionally, it is not readily apparent from the records request itself that the requested reports would contain a statement from or reveal information about a confidential informant.

{¶ 32} "[W]hen the applicability of a public-records exemption is not readily apparent from the content of the record, the records custodian must provide 'specific factual support that goes beyond mere conclusory statements in an affidavit to show that the record sought falls squarely within the prescribed exception.' " *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 34, quoting *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 50.

{¶ 33} In this case, Shuler does not provide any evidence in support of the conclusory statement made in her merit brief. Therefore, she has not met her burden of establishing that the requested investigation reports fall squarely within the exception for confidential law-enforcement investigatory records. *See Jones-Kelley*, 2008-Ohio-1770, at paragraph two of the syllabus. Accordingly, Howard is

entitled to a writ of mandamus ordering Shuler to provide any responsive investigation reports.

### b. Video footage from cameras pointed at NCCC holding cell

{¶ 34} Shuler contends that the requested video footage is not a public record, because it is an infrastructure record under R.C. 149.433(A). That provision defines an "infrastructure record" as "any record that discloses the configuration of critical systems including, but not limited to, communication, computer, electrical, mechanical, ventilation, water, and plumbing systems, security codes, or the infrastructure or structural configuration of a building." R.C. 149.433(A) further provides that "'[i]nfrastructure record' does not mean a simple floor plan that discloses only the spatial relationship of components of the building."

{¶ 35} Shuler argues in her merit brief that the security footage *may* contain blind spots such that it could be used to plan an attack on a guard. However, Shuler did not submit an affidavit or other evidence attesting that disclosing the security footage would reveal blind spots. "[U]nder our precedent, it is not enough to say that a record is *probably* within a statutorily prescribed exemption: the public office or records custodian must show 'that the requested record falls *squarely* within the exemption.' " (Emphasis in *Welsh-Huggins*.) *Welsh-Huggins*, 2020-Ohio-5371, at ¶ 63, quoting *Jones-Kelley* at paragraph two of the syllabus.

{¶ 36} We have previously held that security-video footage was not an infrastructure record under R.C. 149.433(A), because the video did not show more than the spatial relationship of components of the building and did not disclose the configuration of a critical system. *State ex rel. Rogers v. Dept. of Rehab. & Corr.*, 2018-Ohio-5111, ¶ 11-13. Here, Shuler did not submit any evidence indicating that the requested video footage shows anything beyond the spatial relationship of components of the building. Therefore, she has not met her burden of establishing that the requested video footage falls squarely within the exception for

infrastructure records. Accordingly, Howard is entitled to a writ of mandamus ordering Shuler to provide the video footage.

### c. Grievance disposition

{¶ 37} Shuler responded to Howard's request for the grievance disposition by stating that Howard would need to request any grievances and dispositions from his current inspector. Shuler does not include an argument in her merit brief as to why this response was proper under the Public Records Act.

{¶ 38} In *State ex rel. Clark v. Dept. of Rehab. & Corr.*, we held that when an inmate sent a public-records request to a prison's public-information officer—an employee designated as the proper person to receive public-records requests—that person had a duty to respond to the request. 2025-Ohio-895, ¶ 11. In this case, Shuler attested that she has been trained how to respond to public-records requests and that one of her job duties is to respond to requests made through the kite system. Furthermore, Howard requested the grievance disposition from the NCCC inspector. Shuler has not provided an argument or explained why the MANCI inspector would be the custodian of that record given that it concerns an incident that occurred at NCCC. Therefore, Shuler improperly denied Howard's request for the grievance disposition. Accordingly, he is entitled to a writ of mandamus ordering Shuler to provide it.

### d. Name of the employee who ordered Howard to segregation

{¶ 39} In his July 2021 kite, Howard also stated: "I would like to know who order[ed] me to segregation on Monday March 29, 2021." Shuler did not respond to this request in her response.

{¶ 40} Shuler argues that Howard's request for the employee's name is moot because Howard was provided this information in December 2021. Shuler submitted with her merit brief a letter to Howard from counsel for MTC, dated December 22, 2021, in response to another public-records request.

**{¶ 41}** In that letter, Howard was provided the name and position of the employee who ordered Howard to be placed in the holding cell on March 29, 2021. The letter was purportedly filed by Howard as an exhibit attached to a complaint in the Franklin County Court of Common Pleas.

**{¶ 42}** The December 22, 2021 letter was not filed by the deadline for the submission of the parties' evidence in this case. Nevertheless, we have considered extrinsic evidence for the purpose of showing that a records request is moot. *State ex rel. Kesterson v. Kent State Univ.*, 2018-Ohio-5110, ¶ 13, quoting *State ex rel. Cincinnati Enquirer, Div. of Gannett Satellite Information Network, Inc. v. Dupuis*, 2002-Ohio-7041, ¶ 8 (a public office that produces requested records prior to the court's decision renders the mandamus claim for production of the records moot, and the "'event that causes a case to become moot may be proved by extrinsic evidence outside the record' ").

**{¶ 43}** In this case, Howard received the information he sought—not only before we issued this decision—but also before he filed this case. Thus, his request is not moot. Rather, because his request was satisfied before he filed his complaint, he did not have a cognizable claim in mandamus regarding the information when he brought this action. *See State ex rel. Payne v. Rose*, 2023-Ohio-3801, ¶ 8 (when a requester receives a record before instituting the mandamus action, his claim should be denied outright rather than denied as moot). Ultimately, "'[m]andamus does not lie to compel an act that has already been performed.' " *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.*, 2001-Ohio-1585, ¶ 9, quoting *State ex rel. Jones v. O'Connor*, 1999-Ohio-470, ¶ 5.

**{¶ 44}** Shuler has shown that her employer previously provided Howard with the requested name of the person who ordered him to be placed in segregation on March 29, 2021. Therefore, we deny Howard's request for a writ of mandamus as to that request.

**{¶ 45}** To summarize, regarding the records requests made in Howard's July 2021 kite, we grant a writ of mandamus ordering Shuler to provide Howard with any responsive investigation reports, the video footage for any camera pointed directly at the NCCC holding cell in segregation for the requested time frame, and the grievance disposition. However, we deny Howard's request that we order Shuler to identify the employee who ordered him to segregation.

*2. Howard's March 2024 kite*

**{¶ 46}** It is not clear in Howard's amended complaint whether he intended to request separate mandamus relief based on his March 2024 kite. Both his July 2021 kite and his March 2024 kite are listed under his first cause of action. In contrast, the mandamus claim based on his May 2024 kite is set forth as a separate cause of action. Further, he identified the March 2024 kite as a second public-records request in the kite itself, and he stated in both his amended complaint and in the kite that it requested the same public records as the July 2021 kite.

**{¶ 47}** Regardless, Howard has not shown that he is entitled to mandamus relief based on the March 2024 kite, because as explained below, he has not presented any evidence indicating that Shuler received the kite or was otherwise involved in responding to the requests made within it. *See Griffin*, 2021-Ohio-1419, at ¶ 10 (a requester must prove by clear and convincing evidence a clear legal duty on the part of *the respondent* to provide the record).

**{¶ 48}** The March 2024 kite in evidence shows that Howard submitted the kite to the warden's administrative assistant at MANCI and addressed it to the public-records officer at MANCI. In the beginning of the kite, Howard requested that it "be placed in the [NCCC]—operated by [MTC] public records officer portal." Howard then addressed the rest of the kite to the "NCCC/MTC public records officer."

**{¶ 49}** The July 2021 kite's log notes that that kite was forwarded to NCCC before Shuler responded. However, there is no forwarding notation anywhere in

the March 2024 kite and the staff response to the March 2024 kite does not indicate that it was transferred to NCCC. Instead, Nelson responded that a separate written response, which may include public records, would be provided as soon as reasonably possible. He further stated that MANCI did not currently have a warden's administrative assistant but that MANCI was working as quickly as possible to fill the vacant position. Nelson changed the status of the kite from open to closed on the same day he responded. There are no log entries in the kite from Shuler nor is there any other indication that the kite was ever forwarded to her or to NCCC. Howard has not submitted any other evidence showing that Shuler or NCCC received his March 2024 public-records request.

{¶ 50} "A prior public-records request is a prerequisite to a mandamus action." *State ex rel. Ware v. Gabbard*, 2025-Ohio-1022, ¶ 8. In this case, not only was the March 2024 kite never forwarded to Shuler, there is also no evidence that it was ever seen by any employee of MTC. Therefore, Howard has not shown by clear and convincing evidence that Shuler had a duty to respond to the March 2024 public-records request or to provide him with the requested records. *See Griffin*, 2021-Ohio-1419, at ¶ 10. Accordingly, Howard is not entitled to mandamus relief based on the March 2024 kite.

*3. Howard's May 2024 kite*

{¶ 51} Howard also submitted his May 2024 kite to the warden's administrative assistant at MANCI and addressed it to the public-records officer at MANCI. He again requested that the kite be forwarded to the public-records officer for NCCC. A person referred to as "Plank K." provided the staff response, stating, "I have forwarded your request to NCCC." However, there is no notation on the kite indicating that it was forwarded, and there are no responses from Shuler or any other employee of NCCC. Instead, the kite log shows that Plank closed the kite on May 13, 2024. By comparison, when the July 2021 kite was forwarded to NCCC, the kite was not marked as closed until after Shuler responded.

{¶ 52} Howard is required to show by clear and convincing evidence that Shuler had a duty to provide him with records in response to his public-records request. *Griffin* at ¶ 10. But Shuler had such a duty only if she received the public-records request. The May 2024 kite itself is not clear and convincing evidence that the kite was forwarded to Shuler, nor has Howard submitted other evidence indicating that it was forwarded. Therefore, Howard is not entitled to mandamus relief based on the May 2024 kite.

### 4. *Howard's request that Shuler be ordered to provide the July 2021, March 2024, and May 2024 kites*

{¶ 53} Howard also requests in his amended complaint that we order Shuler to provide the kites he sent in July 2021, March 2024, and May 2024, in which he made his public-records requests. However, a prior public-records request is a prerequisite to a mandamus action. *Strothers*, 2012-Ohio-1007, at ¶ 14. Howard has not shown by clear and convincing evidence that he ever submitted a public-records request for those kites. Therefore, we deny his request that Shuler be ordered to provide those kites.

{¶ 54} In conclusion, we grant a writ of mandamus compelling Shuler to provide the investigation reports, the video footage, and the grievance disposition requested in Howard's July 2021 kite, but we deny his requests for mandamus relief as to the other requested records.

### C. Statutory Damages

#### 1. *Howard is entitled to statutory damages*

{¶ 55} A public-records requester shall be entitled to statutory damages if (1) he transmitted a written public-records request by hand delivery, electronic submission, or certified mail, (2) he made the request to the public office or person responsible for the requested records, (3) he fairly described the records sought,

and (4) the public office failed to comply with an obligation under R.C. 149.43(B). R.C. 149.43(C)(2).[3]

{¶ 56} As discussed above, Howard did not submit the public-records requests he made in his March 2024 and May 2024 kites to Shuler or show that she failed to comply with an obligation under R.C. 149.43(B).

{¶ 57} However, Howard sent the public-records request made in his July 2021 kite by electronic submission and fairly described the records sought. Further, he sent the request—asking for the investigation report, the grievance disposition, and the video footage—to the public office or person responsible for the requested records. R.C. 149.43(B)(1) requires that "upon request by any person, a public office or person responsible for public records shall make copies of the requested public record available to the requester at cost and within a reasonable period of time." As discussed above, Shuler improperly withheld the investigation report and the video footage, because those records were not subject to the claimed exemption from disclosure. Shuler also improperly denied Howard's request for the grievance disposition. Accordingly, Howard is entitled to statutory damages.

### 2. Amount of statutory damages

{¶ 58} "Statutory damages accrue at the rate of $100 for each business day the office failed to meet one of R.C. 149.43(B)'s obligations, beginning on the day the requester files a mandamus action, up to $1,000." *State ex rel. Horton v. Kilbane*, 2022-Ohio-205, ¶ 15, citing former R.C. 149.43(C)(2).

{¶ 59} Howard requested $2,000 in statutory damages in his amended complaint and $7,000 in damages in his merit brief. Nevertheless, all of Howard's public-records requests that qualify for statutory damages were sent in the same

---

3. The General Assembly has recently made amendments to R.C. 149.43, most notably in 2024 Sub.H.B. No. 265 (effective April 9, 2025), and some provisions have been renumbered. This opinion applies the version of the statute enacted in 2023 Am.Sub.H.B. No. 33 (effective Oct. 3, 2023).

communication, the July 2021 kite. Those requests therefore count as one public-records request for the purpose of awarding statutory damages. *See State ex rel. Ware v. Akron*, 2021-Ohio-624, ¶ 21-22 (two letters sent in the same envelope constituted a single public-records request for purposes of calculating statutory damages). Shuler still has not provided Howard with the records he requested in July 2021. Therefore, Howard is entitled to the maximum $1,000 in statutory damages.

### D. Court Costs

{¶ 60} Howard requests that all court costs and fees be charged to Shuler. To the extent that Howard requests an award of court costs, we deny the request. Howard filed an affidavit of indigency, and, accordingly, there are no court costs to award. *State ex rel. Straughter v. Dept. of Rehab. & Corr.*, 2023-Ohio-1543, ¶ 16. As for the charging of other costs and fees, Howard has not provided any reason that the clerk should deviate from the usual assessment of costs provided for in S.Ct.Prac.R. 18.05. Therefore, we also deny that request.

### III. CONCLUSION

{¶ 61} For the reasons set forth above, we deny Howard's request for leave to supplement his request for damages, Shuler's motion for leave to file corrected evidence, Howard's motion to strike Shuler's evidence, and Howard's motion to strike Shuler's motion for leave to file corrected evidence. We grant a writ of mandamus ordering Shuler to provide Howard with copies of any investigation reports responsive to his July 2021 kite, as well as the video footage and grievance disposition requested in that kite. But we deny Howard's requests that we order Shuler to identify the officer who ordered him to segregation, to provide copies of the records requested in Howard's March 2024 and May 2024 kites, and to provide copies of the kites Howard sent in July 2021, March 2024, and May 2024. We award Howard $1,000 in statutory damages and deny Howard's request for court costs and his request to assess other costs and fees to Shuler.

Writ granted in part
and denied in part.

_____

Jeffery L. Howard, pro se.

Mansour Gavin, L.P.A., Edward O. Patton, and Katie E. Epperson, for respondent.

_____